MACK v. CONSOLIDATED WATER-POWER CO. et al.

(Circuit Court of Appeals, Seventh Circuit. May 16, 1900.)

No. 609.

CANCELLATION OF DEED—FAILURE OF CONSIDERATION—AGREEMENT TO FORM CORPORATION.

Complainant and others, owners of lands, riparian rights, and interests in the water power at two points on the Wisconsin river, joined in an agreement for the express purpose of consolidating all interests in such water power, and improving the same upon "one general plan, with reference to the value of the whole water power," by a corporation to be formed for that purpose, to which each subscriber agreed to convey his property, receiving stock in the corporation therefor in accordance with the value fixed upon the property by arbitrators. The corporation was formed, but certain of the signers refused to accept the award of the arbitrators, or to convey their property. Complainant and others made conveyances, and a suit was brought by the corporation to compel conveyance by the remaining subscribers, which, however, was dismissed, and not renewed, and no further steps were taken towards carrying out the purpose for which the agreement was made. *Held*, that a bill alleging such facts,—that the original agreement was made in the mistaken belief that all interests in the water power were owned by the subscribers; that the conveyance by complainant was made in the hope that it might induce similar conveyances by others, and with the understanding that it should not vest the corporation with ownership of the property until such other conveyances were obtained; and that the original purpose of the corporation could not be carried out, and had practically been abandoned, —stated facts which entitled the complainant in equity to a cancellation of his conveyance.

Jenkins, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Western District of Wisconsin.

The appellant, W. H. Mack, sought by this suit to obtain a decree for the cancellation of 'a deed of conveyance of real estate executed jointly by himself and C. A. Spencer on February 28, 1895, to the Consolidated Water-Power Company, one of the appellees. The deed was executed in pursuance of the following contract, entered into at the time it bears date by the parties whose names are subscribed thereto, of which a copy is set out in the body of the bill:

"The undersigned, owners of lands and riparian rights and water powers at Grand Rapids and Centralia, Wood county, Wisconsin, feeling that the water power at said cities would be of more value if consolidated and improved upon one general plan with reference to the value of the whole water power, do hereby, for the purpose of consolidation, agree with each other, and each in consideration of the agreement of the other, that we will convey all our interest in the said lands, riparian rights, and water power, including the dams and mills, mill flumes, mill machinery, and personal property now in use in connection with said mills and said mill machinery, except merchant stock, teams, sleighs, and wagons, to a corporation to be formed and to be called Consolidated Water-Power Company, and to take in consideration of such conveyance and for the same such share in the stock of said corporation as shall be apportioned to each of us by a board of arbitrators on account of our respective interests and ownership in said lands, riparian rights, and water power, and other property above specified. The lands, riparian rights, and water power, mills, machinery, and property claimed to be held by each of the undersigned, and to which properties this agreement has reference, are particularly described in a schedule, marked 'A,' against the names of the respective claimants, together with all the incumbrances' to which same is subject; and this agreement has no reference to any other

property owned by the subscribers hereto than such as is referred to as the property of such subscribers in such schedule. Such board of arbitrators shall consist of three (3) arbitrators,—Peter R. Thom, T. W. Orbison, of Appleton, Wisconsin, and Frank T. Russell, of Neenah, Wisconsin. We agree to abide by the decision of said board of arbitrators, and to take such amount of stock in said corporation as such board shall award to each of us on account of our conveyance of our interest in said properties. It is further understood and agreed that each of us shall use his respective property free of rent, by paying taxes on the same from the date of this agreement until thirty (30) days after notice that the corporation so to be formed wishes to take possession of said property for the purpose of improving the same, but not exceeding twelve (12) months from date of the award of the arbitrators. Each of the parties hereto hereby agrees that all of his stock in said corporation to be formed shall be pledged to said corporation to be formed, and that such corporation shall have a lien upon the same as security for the payment and discharge of all liens, mortgages, and incumbrances of any kind upon the property of such party subscribing hereto, if any. The conveyance to be made in execution of this agreement shall be made when called for by the company to be formed, and shall be by deeds of warranty, except as to incumbrances therein specified, with abstract of title thereto; and the arbitrators shall determine what liens or incumbrances or mortgages exist against property of any of the parties to this agreement, to secure the satisfaction and discharge of which the stock of the respective owners shall be pledged to the company. The said board of arbitrators shall place a separate valuation upon the water wheels, shafting, machinery, and mill buildings and personal property of each of the undersigned, not including the foundation. Upon giving twenty (20) days' notice of his option after the publication of the award of the arbitrators herein, each of the undersigned who has, upon his land or estate sold, personal property or water wheels, shafting, machinery, or mill buildings shall have the option to keep such personal property, water wheels, shafting, machinery, and mill buildings in the aggregate, and to remove the same from the land sold, providing the same be removed upon sixty (60) days' notice from the company, unless otherwise agreed upon with said company; the same to be kept by him at the valuation fixed upon the same by the board of arbitrators. Said board of arbitrators shall place a separate valuation upon the water wheels, shafting, and machinery appurtenant to and forming part of the electric light plant of the Wisconsin Wood-Pulp Company, and also upon the water wheels, shafting, and machinery appurtenant to and forming part of the electric light plant of Nash Brothers; and the said Wisconsin Wood-Pulp Company and the said Nash Brothers, or either of them, shall have the right to exercise their option to retain or remove their electric light plant, machinery, wheels, shafting, and buildings, independently of their other movable property. The business of the corporation to be formed and to be called Consolidated Water-Power Company shall be limited and confined to the purchase and improvement of water power and lands, the renting and sale of the same, and the sale of the personal property which it may receive under this agreement, and not for the purpose of manufacturing in any of its branches. The expense of the arbitration, making of surveys, and all other expenses incidental to the consolidation of said water power, including fees of attorneys employed by them, shall be paid by the said Consolidated Water-Power Company, except that the respective parties hereto shall, at their own expense, furnish to said arbitrators abstracts of title to their respective properties, and shall also furnish them, free of charge, all such maps and surveys of their respective properties as they now have. Such arbitrators are hereby authorized to cause such other or further surveys to be made as, in their judgment, may be proper or necessary, and to employ hydraulic engineers and such other experts as they may deem advisable, and also to employ attorneys, and procure their opinion on any question that may arise in the course of said arbitration, and to do any and all other things necessary or proper to fully and fairly carry out the purposes of such arbitration. This agreement shall not be binding upon either or any of the parties thereto until it is signed and executed by the following named persons and corporations, to wit, W. E. Mack and C. A. Spencer, Thomas T. Nash and

John L. Nash, B. G. Chandos and B. G. Chandos as administrator of the estate of Marion L. Bensley, deceased, the Wisconsin Wood-Pulp Company, the Grand Rapids Water-Power Company, the Pioneer Wood-Pulp Company, F. MacKinnon, and C. A. Spencer, and when so signed and executed the same shall be binding upon each and every of said parties, and their respective legal representatives, heirs, successors, and assigns. In witness whereof said parties have hereunto set their hands and seals, and said corporations have each caused these presents to be signed by their respective presidents and secretaries thereunto duly authorized, and affixed their respective corporate seals hereto, this 16th day of July, A. D. 1894.

"W. E. Mack. C. A. Spencer. T. E. Nash. John L. Nash. B. G. Chandos. B. G. Chandos, as Administrator M. L. Bensley Estate. The Wisconsin Wood-Pulp Company. Attest: W. E. Mack, Sec'y. C. A. Spencer, Pres. Grand Rapids Water-Power Company. Attest: C. A. Spencer, Sec'y. F. MacKinnon, Pres. Pioneer Wood-Pulp Co., by Geo. E. Hoskinson, Pres. F. MacKinnon. C. A. Spencer."

Opposite each signature is a scroll seal. A notary's 'certificate of acknowledgment is attached. The Consolidated Water-Power Company, which will be called here the "Power Company," and J. D. Witter, who had succeeded to the interest of Spencer, each demurred to the bill for want of merits, for lack of parties, and for failure to show a compliance with equity rule 94. The other defendants F. MacKinnon, the Pioneer Wood-Pulp Company, and the Grand Rapids Water-Power Company each answered, admitting the allegations of the bill, conceding the complainant's right to the relief prayed for, and disavowing fault or blame for the wrongs alleged. The court sustained the demurrer, and, the time allowed for amendment having passed, entered a decree that the bill be dismissed. Besides formal facts, the citizenship and residence of the parties, the lawful organization of the corporations named, the essential averments of the bill, in substance, are: That the agreement set out was executed, as it bears date, on July 16, 1894. That the purpose of the subscribers was to consolidate under one management all the water power of the Wisconsin river at the two cities named. That during the negotiations which led to the execution of the agreement by reason of the mutual representations of the subscribers it became their mutual understanding and belief that they severally owned all of the shores, riparian rights, and privileges necessary to the carrying out of the project, and under that belief signed the agreement, each accepting the statement of every other that he owned the property scheduled in his name. That they signed the proposition under a mutual mistake of fact, and would not have signed if they had known the truth. That the complainant would not have signed had he known that the signers did not own in the aggregate the riparian rights and privileges necessary to the carrying out of the scheme. That in truth the scheme proposed could not be accomplished without the co-operation of other owners of lands abutting on the rapids, and of islands in the river, and of riparian rights and privileges in such lands and islands, and in the waters and water power of the river; yet, trusting that something would happen to remove difficulties, they improvidently, carelessly, and under gross mistake of fact, signed the open offer, assuming that, if the project should turn out to be impracticable, no harm to themselves could result from the signing. That before signing it was understood and agreed that the consolidation of the ownership of all the riparian rights, water powers, and privileges within certain limits on both sides of the river and of all its channels was absolutely essential to the carrying out of the design of the parties, and that whatever they should afterwards do they would do with such design in view; and that when they signed the agreement it should be upon consideration that all the rights and powers necessary to the scheme were owned by the parties to the agreement. That the agreement was signed because of other mistakes of fact, in that many of the subscribers inserted in their schedules descriptions of property which was indispensable to the project, but which they did not own, a list of which is set out. That on July 28, 1894, six individuals named, five of whom, including Thomas E. and John L. Nash, were subscribers to the agreement, and the sixth a signer thereof only as representing a corporate subscriber, entered into articles which two days later were duly recorded, and a certified copy thereof filed in the office of the

secretary of state of Wisconsin, for the formation of a corporation, called the Consolidated Water-Power Company, and designed to carry out the scheme of the agreement; but nothing further was done to complete the organization before February 20, 1895. That meanwhile the Power Company, so far organized, never considered, acted upon, or had submitted to it the agreement of the parties. That nevertheless the arbitrators named, without having been agreed upon by the Water-Power Company, and without giving notice of time and place, without taking evidence, and without hearing any of the parties interested, proceeded arbitrarily and without jurisdiction to make, and on February 13, 1895, to promulgate, an award, a copy of which is set out in the bill. That the award was inequitable, unjust, and also unlawful and void for reasons stated. That at a meeting of the signers of the articles of incorporation on February 20, 1895, Thomas E. and John L. Nash, signers also of the agreement, gave notice to those present that they were dissatisfied with and would not accept the award, and would not take part in any meeting of the signers of the articles of incorporation. That thereupon, after the withdrawal of the two named from the meeting, the other signers of the articles of incorporation held a meeting, and attempted to ratify the award, and to accept the original contract, by passing a resolution to that effect. That at that time no stock of the power company had been subscribed for or issued, and none was subscribed for until the 2d day of March following. That the complainant was willing to accept the award, provided all the others would do likewise, and on February 28, 1895, joined with C. A. Spencer in executing to the power company the deed, which is made an exhibit, "with the exception that, if the other parties, or some of them, should refuse or be unable to convey as proposed by them in said open offer, or if for any other reason it should transpire that the defendant the Consolidated Water-Power Company should be unable to carry out said project of consolidation, his property would be reconveyed." The deed as set out purports to be made "in consideration of the sum of two hundred and fifty-six shares of the stock of the Consolidated Water-Power Company," receipt whereof is acknowledged, and covenants against all incumbrances "except such liens and incumbrances as are mentioned in the award of the arbitrators dated February 13, 1895, pursuant to which this deed is made, and which liens and incumbrances said first party (the grantor) agrees to pay and discharge." That the award was never ratified by the Nashes, or by Chandos as administrator of the estate of Bensley, nor did they or either of them ever subscribe for stock, or convey to the Power Company any of the property scheduled in their respective names; and that the conveyances and subscriptions for stock purporting to be made by the Wisconsin Wood-Pulp Company, Grand Rapids Water-Power Company, and Pioneer Wood-Pulp Company, were each executed by officers of the company without authority, unless merely as officers they had such authority. That on March 2, 1895, the complainant, C. A. Spencer, B. G. Chandos, and F. MacKinnon, for themselves and the estate or corporations which they respectively represented, subscribed for stock of the Power Company to the number of 1,560 shares. That the subscriptions were entered on the records of the company without condition, but in fact each and all were made on condition that they were to take effect and be in force only from the time when all the persons and corporations whose names were signed to the open offer should subscribe for their shares of stock, as provided for in that offer, and on the further conditions that the subscriptions should not be binding upon any of the parties until all the subscribers to the offer should have conveyed their property to the Power Company as proposed in that offer, and that the stock subscribed should be considered as paid for by such conveyances, if validly executed according to the terms of the offer, but not unless they were all so made, and not until they were all made. That the conveyances executed to the company by the complainant and others, copies of which are made exhibits, though signed, sealed, and acknowledged on February 28, 1895, were not delivered before March 16, 1895, when they were placed on record by the grantors, or by some one assuming to act for the Power Company. That before the execution of the conveyance in which he joined the complainant was the owner of the undivided one-half of the property therein described, and, as he believes, is still the equitable owner thereof. That the Power Company has never had authority or right to accept the title

purporting to be conveyed by any of said deeds except in trust until all the signers of the agreement should make conveyances as proposed; and that, being unable to procure conveyances from all the parties, as well as on the other grounds set forth, the company now has no duty to perform in connection with the trust except to reconvey the title to the grantors upon their request. That on June 16, 1895, an action was brought in the name of the Power Company as plaintiff against the Nashes to compel conveyances by them. That at the trial, on issues duly joined, the plaintiff admitted its inability to prove that it had obtained or could obtain the title to such property as was necessary to carry out the design and purpose of the parties to the agreement, and admitted that without such proof it could not obtain the relief sought in the action, and thereupon, on October 30, 1895, judgment of nonsuit was entered against it; and it has not since brought any action against the Nashes, or either of them, for the same cause. That the plaintiff's belief is that it does not intend to bring any such action. That the Nashes do not intend to convey their properties; and that none of the defendants intend to bring such action, but, on the contrary, all concede that such an action could not be maintained. That it is yet a fact that the design of the parties, of the incorporation, and of all that has been done, including the execution of the deeds, would totally fail of accomplishment on account of the inability of the company to obtain the Nash properties. That Nels Johnson and J. D. Witter have acquired control of a majority of the stock of the Power Company, and are endeavoring to force the complainant and others, who have conveyed their property, to abandon the same, or accept an inadequate consideration therefor. That the complainant has demanded of the Power Company a reconveyance to him of his property so conveyed, but the company, under the control of Johnson and Witter, has always refused to reconvey.

T. C. Ryan, for appellant.
George L. Williams and Burr W. Jones, for appellees.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The substance of the case is that the appellant and others, who subscribed the agreement of July 16, 1894, entered into a scheme for the consolidation of the water power of the Wisconsin river at the cities of Grand Rapids and Centralia under the single ownership and control of a corporation, to be created for the purpose, to which the individual owners should convey their respective titles and interests; that to that end they executed the agreement mentioned, believing that the several signers each owned the properties described as his in the schedule appended to the agreement, and that, taken together, those properties included all the shore lands, riparian rights, and water power intended to be included in and necessary to the accomplishment of the scheme; that the corporation was formed, and the complainant and three others of the signers executed conveyances, as stipulated, but that the two Nashes, objecting to the award of the arbitrators, had refused to take further part with the signers of the articles of incorporation of the proposed company; that a suit against them to compel conveyance according to the agreement had failed, and would not be renewed; that the names of corporate subscribers were signed to the agreement, and the conveyances of their respective properties to the company were made without authority except such as the officers had by virtue of their offices without direct corporate action on the subject; that one who sub-

scribed as administrator of an estate had in that capacity no authority to sign or convey, and had never conveyed; that some of the subscribers did not own and could not convey the properties or some of the properties scheduled in their names; that all the properties scheduled did not include all the lands, riparian rights, and privileges, and all the water power necessary to the accomplishment of the scheme; that the agreement was signed by all the parties under mistakes of fact, as stated; that the conveyance by the complainant was executed only for the purpose, if possible, of carrying out the scheme, in the hope that other subscribers would voluntarily proceed, and that, if necessary, others would be persuaded to join therein; but that the corporation had done nothing to that 'end.

Much discussion has been expended upon the nature of the writing of July 16, 1894, the appellant calling it an open offer or proposition, to be submitted to a corporation thereafter to be organized, while, on the other hand, it is insisted that it was from the date of signing a binding agreement that required no further ratification or acceptance. The question is not of such importance that the discussion need be followed. As between the signers, the document constituted an agreement according to the terms and conditions expressed, while in respect to the contemplated corporation it was only an offer or proposition which the corporation, when organized, might accept or reject, and by which, without acceptance, it could not be bound. The signers of the agreement did not thereby bind themselves to organize a corporation, but did contract, each with the others, in fulfillment of the project defined in the preamble of the agreement, to convey his property to the corporation which should be formed under the name and for the purpose stated, and to accept in payment therefor his proportionate share of the capital stock as determined by the arbitrators named. Stated more briefly, the case is that, if the scheme from the beginning was not impossible without the co-operation of others, nothing has been done or now can be expected to be done in its accomplishment according to the original and unchanged design. The averments of the bill are explicit, and the agreement itself declares with equal clearness, that the purpose was to 'consolidate and improve the water power of the two cities "upon the one general plan with reference to the value of the whole water power"; and, on the facts as alleged, an express provision in the agreement that it should be enforced against none unless against all would afford no better basis for an appeal to a court of equity. That intention is not less clear than if explicitly stated in the agreement. It is not a question of consideration. There was sufficient consideration for the signing of the agreement by each in the signing thereof by the others, and the relief sought is to be granted not for a technical failure, in whole or part, of the consideration on which the contract was signed, but for the impossibility of the scheme which it was proposed to inaugurate. The rule that parol evidence may not be admitted to vary a written agreement is not applicable. The facts alleged accord with the agreement. The acceptance by the corporation of the proposition embodied in the agreement bound the subscribers only on condition that the declared purpose of the agreement could

and should be accomplished, and, once the corporation proved unable, or failed for an unreasonable time, to proceed as contemplated, the subscriber, in the absence of an estoppel or dominating equity to the contrary, had a right to withdraw.

Something is sought to be made of the averment of the bill to the effect that the parties conducted their preliminary negotiations negligently, and entered into the agreement without careful inquiry into the facts of the situation and the feasibility of the scheme; but, from the very nature and purpose of the agreement and the relation of the signers to each other, it is evident that the rules against laches or negligence in the execution of ordinary contracts by parties standing in all respects at arm's length do not apply. The bill shows the failure and inability of the corporation to enter upon the execution of the scheme proposed, and it hardly need be said that relief is not sought or to be granted because the project, after inauguration and trial, had not proved successful or profitable; nor on the theory that a stockholder can withdraw from a corporation once established because it has ceased to be successful. It appears from the bill that with a knowledge of the refusal of the Nash brothers to co-operate further with the incorporators, the complainant and others executed conveyances of their respective properties to the corporation, and it is urged that "by taking these steps they bound themselves irrevocably to join this corporation." What reason is there for the assertion? If true, then for what purpose, and under what new agreement, and with whom, was it proposed to proceed? It was, of course, competent for the other parties, or any of them, after the refusal of the Nashes to go on, to proceed independently; but did they? It is not so averred, and the contrary could not be alleged more distinctly or unequivocally. It would have required a new agreement, or at least a modification of the existing one, neither of which is left to possible inference. On the contrary, immediately after the announcement by the Nashes of their position, the other signers of the articles of incorporation, with an evident purpose to abide by and to enforce the original contract in its integrity, passed the resolution to accept the contract and to ratify the award, and promptly instituted suit to compel the Nashes to convey. It was after the adoption of that resolution that the complainant and others executed the conveyances of their respective properties; and, even if the bill were silent on the point, the inference of fact, if not the legal presumption, would be clear that they executed their deeds with a purpose to perform the contract, in the expectation that the other signers would do or be compelled to do likewise, and not in pursuance of any modified agreement or scheme, which, it is shown, could not accomplish the original design, or be in itself successful without the Nash properties.

The action is not, in substance, one for dissolving and winding up the corporation. The complainant was not an original corporator, and his recovery of the legal title to his property does not involve a termination of the corporate life, or of the prosecution of the business defined in the articles of incorporation. Other parties, it seems, desire to keep the corporation going, and with that desire the court need not interfere; but there is no good reason for allowing it to re-

tain the .title to the complainant's property when the purpose for which it was obtained has been abandoned or cannot be accomplished; The cancellation of the complainant's deed and the reconveyance of the property to him will, of course, extinguish whatever right to stock in the corporation he might have or assert. If there has been expense incurred which ought to be a charge against the complainant or his land, the decree may require payment. Equity rule 94, it is clear, has no application to the case. The decree of the circuit court is reversed, with direction to overrule the demurrer to the bill, and to proceed in accordance with this opinion.

JENKINS, Circuit Judge (dissenting). I have greatly doubted, and still doubt, whether the bill exhibits a case which requires the defendants to answer. It has seemed to me that the action of the complainant in subscribing to the stock of the corporation and in conveying the land in pursuance of the agreement and in acceptance of the award, after the Nashes, to his knowledge, had refused to accept the award, or to participate further in the organization of the corporation, at least in the absence of a proper and an excusing explanation, amounted to an election to proceed with the others in the scheme without the participation of the Nashes. I have been unable to find in the pleading any explanation of the complainant's action that is satisfactory to my mind, but, as my brethren think otherwise, and the question is merely one of pleading, and the matter may come before us upon proofs, and possibly in a more satisfactory manner, I deem it unnecessary at this time to give further expression of my views.