## ALASKA RURAL REHABILITATION COR-PORATION v. PIPPEL.

No. S–2043.

District Court of Alaska.  Third Division.  Valdez.
April 11, 1939.

L. V. Ray, of Seward, for plaintiff.

Royal J. Bunn, of Anchorage, for defendant.

HELLENTHAL, District Judge.

This matter is before the Court on the defendant's second amended and substituted demurrer to the complaint herein, in which the following grounds for demurrer are set forth: First, that the plaintiff has no legal capacity to sue; second, that the complaint does not state facts sufficient to constitute a cause of action; and third, that the court has no jurisdiction of the defendant or of the subject matter of the cause.

The complaint in this case sets forth an agreement entered into in Minnesota, which agreement is as follows:

"Alaska Rural Rehabilitation Corporation

"Matanuska Valley Settlement Agreement

"This Agreement made this 16th day of April, 1935, between the Alaska Rural Rehabilitation Corporation, whose principal office is at Juneau, Alaska, hereinafter known as the Corporation, and Walter George Pippel of the County of Hennepin, State of Minnesota, whose Post Office address is Robbindale, R. F. C. 1 Minn., hereinafter known as the Colonist, in behalf of himself and family, consisting of the following members: Mrs. Melva Pippel; Gale, daughter; Robert, son; Jimmie, son; Jack, son, Witnesseth, That

"Whereas the Colonist and his family desire to settle on tillable land in the Matanuska Valley in the Territory of Alaska in order to obtain subsistence and gainful employment from the soil and coordinated enterprises, establish a home, and enjoy the benefits of the Rural Community now being formed there; and

"Whereas the Corporation is a non-profit corporation and has been organized and established to assist worthy and well-qualified individuals and families to accomplish the above mentioned purposes and it desires to assist the Colonist and the members of his family in doing so;

"Therefore be it agreed, for and in consideration of the above premises and the mutual covenants herein contained, as follows:

"1.  *Transportation to Alaska* ,

"The Corporation will assume ·the obligation to the transportation companies of the freight transportation of household and other effects up to two thousand (2,000) pounds of the Colonist and the above mentioned members of his family from the point of departure to Palmer Station in the Matanuska Valley, and advance and pay for the purchase of, and include in said freight and its transportation, such needed household furniture, small tools and home equipment as shall be agreed upon; same to be ultimately repaid by the Colonist at the same low costs and special Colonist rates as that charged the Corporation.*

"2.  *Temporary Camp*

"Upon arrival of the Colonist and his family at Palmer Station the Corporation will make available tents for their temporary shelter and habitation pending construction of their dwelling house and their moving on the land which they expect to make their permanent home.

"3.  *Land and Home in the Rural Community*

"The Corporation will make available to the Colonist for a farm and home for himself and his family not less than forty (40) acres of land on terms of payment running over a period of thirty years.**

"The Corporation will finance the Colonist in building his dwelling house and other permanent improvements on

" * The expense of travel of the Colonist and the members of his family and the carriage of their baggage from the point of departure to destination in Alaska is to be attended to by the Emergency Relief Administration of the home state at no cost to the Colonist or members of his family and with no obligation of repayment.

" ** The Corporation is in a position to make available to the Colonists timbered land as low as Five ($5.00) Dollars an acre and other land at prices in proportion thereto depending upon the location and the extent to which the land has been cleared.

the land. The Colonist will repay for the same on an amortized plan over a period of thirty years.

"4. *Farm Machinery and Equipment*

"The Corporation will furnish the Colonist farm machinery, equipment, livestock and other supplies and furnishings on such use-charge, lease, rental or sale basis as may be agreed upon.

"5. *Subsistence*

"The Corporation will furnish subsistence to the Colonist and the above members of his family at actual cost from their arrival at Palmer Station until such time as the products which the Colonist and his family raise will enable him directly or by exchange or sale to furnish subsistence for himself and family.

"6. *Community Activities*

"The Corporation will build and equip such educational, cultural, recreational, health, work and business centers in the community as the life of the Community shall require, and make the same available to the Colonist and members of his family and other members of the community, and will furnish social and economic direction, supervisory and consultation services to the Colonist, members of his family and other members of the community on terms of mutual agreement and accord.

"*Fulfillment of This Agreement*

"The Colonist agrees that the relationship established by this contract between him and the Corporation is to assist him and the members of his family to become established in a new home on a self-sustaining and self-supporting basis, and that he will repay all loans made to him by the Corporation in connection with the provisions under the above numbered headings of this agreement or otherwise made to him by the Corporation, and pay for all material, supplies, equipment, furnishings, services, and personal, real or mixed property referred to in the provisions under the above

numbered headings of this agreement or otherwise furnish-
ed him by the Corporation, which are rented, leased, or
sold to him by or through the Corporation, upon such terms
as are agreed upon, and will enter into and perform all
obligations and contracts necessary in order to do so: it
being understood that interest rates on all obligations shall
not be greater than three (3) per cent per annum from
the time they are incurred and that payment of said inter-
est shall not begin until the first day of September, 1938,
and that payment of installments of the principal on all
said obligations shall not begin until the first day of Septem-
ber, 1940, unless the Colonist elects to make such payments
at an earlier date.

"The Colonist further agrees that he and the members of
his family will abide by all Corporation administrative di-
rections and supervision in connection with control of crop
production, processing, marketing, distribution, crop rota-
tion, soil management, sanitation and other measures for
the welfare of the community, and to cooperate with the
Corporation, its representatives, and with the other colonists.
in building up a successful Rural Community.

"It is mutually agreed by the parties hereto that this
agreement is subject to any Federal, State or Territorial
laws now existing or which may be hereafter enacted.

"Alaska Rural Rehabilitation Corporation.

"By /s/   L. H. Watkins        Agent
            (Name)                (Title)

"/s/      Walter G. Pippel
          The Colonist

"Witnesses:
"/s/ Willard Sandhoff
"/s/ William Sandhoff"

The complaint then goes into detail setting forth the:
matters the plaintiff has done pursuant to said agreement.
Included therein it is alleged that the plaintiff made avail-
able a certain farm and home for the defendant and his
family and advanced moneys to the defendant; that the.

·plaintiff tendered the defendant for his signature and execution a contract for the sale and purchase of the realty herein referred to, which contract the defendant refused to sign; and did request, at approximately the same time, the defendant to sign a certain promissory note and chattel mortgage which the defendant refused to execute; that thereafter the plaintiff gave the defendant notice to quit said property, which plaintiff describes as Homesite Tract No. 106, and that the defendant refuses to depart therefrom and now wrongfully holds possession of the same from the plaintiff, notwithstanding the ownership of and right of possession to said land by the plaintiff, all to the damage of the plaintiff in the sum of $8,429.43; that the defendant refused to sign the Members' Standard Marketing Contract and has refused and still refuses to join the Matanuska Valley Farmers' Cooperating Association and has each year since 1936, privately sold his produce and farm products without regard to said Cooperating Association to the irreparable damage of said plaintiff, that the actions of the defendant create a cloud upon the title of the plaintiff to the real property in this complaint described; that the defendant has not sufficient property to satisfy the plaintiff for the wrongs and injuries done. The plaintiff offers to allow all proper credits for moneys expended or improvements made by the defendant and offers to do full and complete equity in the premises and prays: First, that the defendant, Walter G. Pippel, be required·to set forth his claim to the premises, if any he has; second, that this Court may enter a decree declaring a rescission and cancelation of that certain contract in the complaint described as Matanuska Valley Settlement Agreement; third, that this Court enter its decree herein quieting the title to Homesite Tract No. 106 of the Matanuska Valley Colony; fourth, that this Court by order in such regard made issue its due and proper process for the restitution to the plaintiff of said land and premises; fifth that the defendant, and all persons claiming or to claim by, of, from or through said defendant, be forever barred

and foreclosed from setting up, claiming, establishing, or attempting to establish any claim, right, demand, interest and title in and to said premises, and in and to any and all portions and parts thereof. The plaintiff further prays that since this Court has acquired jurisdiction of the subject matter and of the parties, it proceed to give adequate and complete relief, including such relief and damages as plaintiff may prove itself entitled to under the evidence and that it have and recover from the defendant, its costs and disbursements and for such other and further relief as to the Court may seem just and equitable.

During the argument and in his briefs, counsel for the defendant contends that the complaint does not state facts sufficient to authorize the Court to give equitable relief and particularly that the complaint does not state facts sufficient to authorize the Court to declare a rescission of the contract set forth in full herein.

The defendant's attorney in his brief and in the oral argument placed much stress upon the fact that the contracts and paper writings presented to the defendant contain restrictions on alienation which he claims are illegal. He contends that the complaint does not show specifically that the defendant was indebted to the plaintiff in the amount for which the note and mortgage was asked and that the plaintiff asked the defendant to enter into a contract regarding the marketing of his products with a corporation which was not in existence at the time of the making of the agreement herein set forth; and finally contends that the question presented to the Court is whether the actions of the defendant, set forth in the complaint, constitute such a failure of consideration as to authorize a court of equity to take jurisdiction to declare a cancelation or rescission of the contract. He contends that the contract has been executed and that the actions of the defendant do not go to the very foundation of the contract, and that therefore, the plaintiff should be relegated to his remedy at law. The Court is of the opinion that this is the vital

point under consideration, that the question as to the amount of indebtedness and the provisions of the contract regarding the marketing of products and the provisions of the deed as to what limitations are to be incorporated therein are co-lateral issues and can perhaps be adjusted.

12 C.J.S., Cancellation of Instruments, § 29, pp. 982, 983 : *"Nonperformance of Contract.* \* \* \* If the repudiation or breach goes to the root of the contract and damages cannot be ascertained with reasonable certainty, rescission will be allowed with restitution instead of compensation. \* \* \* "

4 R.C.L. Sec. 14, p. 500: *"Want or Failure of Consideration.*—Furthermore, it has been held that conveyances made by the owners of land, riparian rights and water powers in pursuance of an agreement entered into for the purpose of consolidating all interests in such water powers, and in contemplation of the formation of a corporation for that purpose, will be canceled where some of the signers refused and could not be compelled to convey and others did not own the lands scheduled in their names, so that the original purpose of the corporation could not be carried out and had to be abandoned. \* \* \* " Mack v. Consolidated W.-P. Co., 7 Cir., 101 F. 869, 873.

9 American Jurisprudence P. 373, Par. 28: "In the absence of an agreement for termination upon breach by such nonperformance, rescission or cancelation will not be granted for a breach of contract which is not so substantial and fundamental as to defeat the object of the parties in making the agreement."

McAllister-Coman Co. v. Matthews et al., 167 Ala. 361, 52 So. 416, 140 Am.St.Rep. 43: "A contract is made by the joint will of two parties, and can only be rescinded by their joint will; but one party may so wrongfully repudiate it as to authorize the other to renounce it and refuse to be longer bound thereby, as when his acts and conduct evince an intent to no longer be bound."

Gillette v. Metzgar Register Co., 243 Mich. 48, 219 N.W. 644, 647:

"Plaintiff asks for rescission and cancellation of the contract.

"Rescission is often spoken of as the converse of specific performance, meaning that a party who could successfully resist a suit for specific performance will be entitled affirmatively to demand the rescission of the contract. In general, where a specific execution would be refused, a rescission will be decreed. Black on Rescission and Cancellation, par. 12; 9 C.J. 1196. Where the circumstances of a particular case are such that the court would refuse to enforce the contract specifically at the suit of one of the contracting parties, it is within the discretion of the court to grant rescission at the suit of the other party. 9 C.J. 1196.

"In Kirby v. Harrison, 2 Ohio St. 326, 59 Am.Dec. 677, it is said:

" 'It is undoubtedly within the sound discretion of the chancellor to refuse to rescind a contract, the specific execution of which he would not decree. * * * But, in general, where a specific execution would be refused, a rescission will be decreed.'

"Unless the damages can be ascertained with reasonable certainty, rescission is a matter of right with restitution instead of compensation. 9 C.J. 1183. * *. * "

The doctrine of Gillette v. Metzgar Register Co., supra, has been questioned and the Court agrees that this doctrine cannot be generally applied, but in a case like the one under consideration, where the contract is such that damages are necessarily speculative and uncertain and the contract is itself incomplete and the Court cannot grant specific performance because it would have to first make a contract and then enforce it and might also have to enforce the performance of personal service, the Court cannot see how a court of law can grant adequate relief. Especially is this so since the rights of the other colonists are involved. The enforce-

ment of which rights, if they have a remedy, would require a multiplicity of suits.

██ It appears to the Court that the contract in question is a mere skeleton agreement which necessarily depends upon further consideration and the making of further agreements between the parties and provides for the cooperation of the defendant with the plaintiff and its representatives and with other colonists; that only part of the contract has been performed and is still in a large part executory and that it is not such a contract as to warrant a court to decree specific performance; that the provision providing for the cooperation of the defendant is a substantial and fundamental provision and requirement of said contract and that the refusal of the defendant to cooperate with the plaintiff would defeat the object of the parties making the contract.

For the reasons stated, the Court is of the opinion that the complaint states a cause of action in equity for cancelation or rescission of the contract set forth in the complaint. The extent of the relief in equity will depend upon subsequent pleadings and if a cause of action at law is included for which the court of equity cannot properly give relief, it is within the province of the Court to submit such matter to a jury.

The plaintiff may prepare an order overruling the Demurrer herein.