Wilde v. Wilde.

GUSTAVE W. WILDE, APPELLANT, v. SUSAN P. WILDE, APPELLEE.

FILED OCTOBER 17, 1893.    No. 5130.

1. **Contracts Contrary to Public Policy:** ENFORCEMENT. Courts will refuse to enforce contracts which are manifestly contrary to public policy or sound morals.

2. **Divorce:** CONTRACTS OF SEPARATION: PLEADING: EVIDENCE. Where there is nothing on the face of a contract to suggest that it is founded upon an unlawful consideration the illegality thereof must, as a rule, be pleaded when relied upon as a defense. But if on the trial it is apparent from evidence material to the issues that the cause of action or defense rests upon an agreement *contra bonos mores* the court will of its own motion refuse to enforce such immoral agreement, even should both parties assent to its enforcement.

3. ———: CONTRACTS TO FACILITATE: VALIDITY: COLLUSION. A contract intended to facilitate the procuring of a divorce at the suit of either of the parties thereto is void.

4. ———: ALIMONY: DISCRETION OF TRIAL COURT. In the allowance of alimony upon the awarding of a divorce much discretion is necessarily conferred upon the district court, and this court will not interfere on the grounds that the amount allowed is excessive unless there appears to have been a clear abuse of discretion.

5. **Evidence** examined, and found to sustain the decree of the district court.

APPEAL from the district court of Custer county. Heard below before HAMER, J.

The facts are stated in the opinion.

*Sullivan & Gutterson*, for appellant:

A contract of separation between husband and wife is legal and should be enforced. (*Galusha v. Galusha*, 116 N. Y., 635; *Randall v. Randall*, 37 Mich., 563; *Desbrough v. Desbrough*, 29 Hun [N. Y.], 592; *Carpenter v. Osburn*,

102 N. Y., 552; *Dillinger's Appeal*, 35 Pa. St., 357; *Hutchins v. Dixon*, 11 Md., 29–40; *Jones v. Clifton*, 101 U. S., 225; *Squires v. Squires*, 53 Vt., 208.) Had the terms of the second contract been included in the first, the entire contract should not for that reason be declared void. (*Mercein v. People*, 25 Wend. [N. Y.], 64; *Allen v. Affleck*, 64 How. Pr. [N. Y.], 380.)

*R. A. Moore*, contra, contending that the contract is invalid, cited: 1 Bishop, Marriage and Divorce, sec. 724; *Hollowell v. Simonson*, 21 Ind., 398; *Bullard v. Briggs*, 7 Pick. [Mass.], 540; *Wilson v. Bull*, 10 O., 256; *Tapley v. Tapley*, 10 Minn., 448; *Stiles v. Stiles*, 14 Mich., 75; *Dickerson v. Dickerson*, 26 Neb., 318.

*Thomas Darnall, J. S. Kirkpatrick*, and *M. McSherry*, also for appellee.

Post, J.

This is an appeal from a decree of the district court of Custer county awarding to the defendant, appellee, a divorce and alimony. As the controversy in this court is confined to the question of alimony it is unnecessary to examine the petition, answer, or cross-bill. From the reply it appears that some nine months prior to the commencement of the action the parties entered into a written agreement as follows:

"Articles of agreement, made and entered into this 16th day of June, 1890, by and between G. W. Wilde, of Broken Bow, Nebraska, party of the first part, and Susan P. Wilde, party of the second part, witnesseth:

"That the said party of the first part hereby covenants and agrees, for and in consideration of the covenants and agreements hereinafter to be made and kept by party of the second part, to pay to party of the second part the sum of $2,600 at the dates and in the manner following, to-wit:

Wilde v. Wilde.

' "Party of the first part agrees to transfer and indorse to party of the second part the sum of $1,315.39 in notes now held by party of the first part against H. H. Squires, said notes to be accepted by party of the second part at their face value with accrued interest added, and amounting to $1,373.40; to pay party of the second part the sum of $1,000 in cash on sixty days demand after August 1, 1890, said sum to be evidenced by a promissory note of even date herewith; and to pay to party of the second part the sum of $226.60 one year from date hereof, said sum to be evidenced by promissory note of even date herewith, drawing interest from date until paid at the rate of ten per cent. Party of the first part further agrees to execute and deliver to the party of the second part a lease of the residence property, together with the grounds adjacent thereto and belonging with the same, together with all outbuildings on said premises, the same being the residence property where the parties hereto now live. Said lease is to run for a period of one year from and after the date upon which the parties cease to live and cohabit together as man and wife. The party of the second part to have the right to the entire and exclusive control of said premises for the period of time above stated:

"Provided, however, that party of the second part has no right to sublease any portion of said premises without the consent of the party of the first part.

"Party of the first part further agrees to convey to party of the second part, by bill of sale having absolute title, one phaeton, and all right, title, and interest of the party of the first party in and to all the household goods and furniture of every kind belonging to the parties hereto now situate and being in their residence in Broken Bow, together with all carpets, pictures, cooking utensils, dishes, stoves, the intention of the parties being to convey the interest of the party of the first part in and to all the personal property belonging to the parties, and now situate in

their residence at Broken Bow, to the party of the second part.

"It is further agreed that party of the second part is to have all the clothing belonging to herself and daughter, and also all bed-clothes and bedding now owned and used by the parties.

"Party of the first part hereby agrees to convey by warranty deed to party of the second part all his interest in her homestead. It is further amply agreed between the parties that party of the first part shall convey by warranty deed to party of the second part the real estate standing in his name in the city of Tama in the state of Iowa, said deed to be deposited as an escrow by some person to be agreed upon, to be delivered to party of the second part when she delivers to party of the first part a certain note for the sum of $1,000, executed by party of the first part and made payable to Parisade Barrett, the ward and child of the party of the second part.

"In consideration whereof the party of the second part agrees to accept the above conveyances of money as payment in full of all her claims of dower and alimony, and all other interest of every kind in the property, both real and personal, of the party of the first part, and of all claims of every kind held by party of the second part against the party of the first part, including any claims for alimony, support, and maintenance after the parties have ceased to live together as man and wife, including all interest of any kind in and to the real estate belonging to the party of the first part.

"Provided, however, that if the parties continue to live together for more than one year after date hereof then this shall not in any way affect the rights of the party of the second part to said dower or other interest as provided by law in and to the property of the party of the first part acquired after the expiration of one year from date hereof.

"Party of the second part further agrees to convey by

deed and release to party of the first part all her interests of every kind in and to all real estate and property of every description owned by party of the first part. For the true and faithful performance of the above agreements, we bind ourselves, our heirs, executors, and assigns.

"Witness our hands the day and year last above written.

"(Signed)                    SUSAN P. WILDE.

                        "GUSTAVE W. WILDE."

It is alleged by the plaintiff that he has paid to the defendant the money mentioned in said agreement, and delivered to her the conveyances and evidences of indebtedness provided for therein, and that said money and property were received by her in full settlement and satisfaction of all claims against him or his estate, including alimony, and that she has now no interest in or claim upon his property. On the part of the defendant it is contended: First—That the money and property referred to in the above agreement had come into her hands as administratrix of the estate of her first husband, and had been turned over by her to the plaintiff; hence there was no sufficient consideration for the release of her interest in the plaintiff's property. Second—That said agreement was intended to facilitate the procuring of a divorce, and therefore void as against public policy. That the object of the parties was the termination of the marriage relation does not, we think, admit of a doubt. At the time of the execution of the contract set out above, a second agreement was entered into, of which the following is a copy:

"This article of agreement, made and entered into this 16th day of June, 1890, by and between G. W. Wilde, of Broken Bow, Nebraska, party of the first part, and Susan P. Wilde of the same place, party of the second part, witnesseth: That in consideration of another agreement of even date herewith, made between the same parties, and the full and complete fulfillment of all of its conditions by each of the parties, it is hereby mutually agreed that

neither party to this agreement shall in any manner resist the application of the other to obtain a divorce from the bonds of matrimony at any time when either party shall see fit to commence proceedings for that purpose. In witness whereof the parties have hereunto set their hands the day and year last above written.

> "Susan P. Wilde.
> "G. W. Wilde."

Construing the two instruments together it is very evident that their purpose was to facilitate the procuring of a divorce at the suit of one or the other of the parties. That all similar agreements are contrary to the settled policy of the law, and therefore void, is a proposition which will not seriously be controverted at this late day. From the multitude of cases in point in this country and England, it is sufficient to cite the following: *St. John v. St. John*, 11 Ves. [Eng.], 526; *Merryweather v. Jones*, 4 Giff. [Eng.], 509; *Sayles v. Sayles*, 21 N. H., 312; s. c., 53 Am. Dec., 208; *Durant v. Titley*, 7 Price [Eng.], 577; *Muckenburg v. Holler*, 29 Ind., 141; *Hamilton v. Hamilton*, 89 Ill., 349. (See also Addison, Contracts, p. 254; 2 Bishop, Marriage and Divorce [5th ed.], sec. 239.)

It is earnestly contended by the plaintiff that the last named agreement was not the inducement for the relinquishment by the defendant of her interest in his estate; and in support of that contention we are referred to her testimony, in which she says, on her cross-examination, that there was no reference to divorce proceedings until after the execution of the other agreement. It is a sufficient answer to this contention that courts will refuse their aid in enforcing similar agreements, not on account of any solicitude for the parties, but as a duty they owe to the cause of justice and the integrity of its courts. Whenever it is apparent that an agreement is contrary to public policy and sound morals, it will be ignored by the court, even though both parties should assent to its enforcement. (*Wight v.*

*Rindskopf*, 43 Wis., 344.)    Here it is evident that the two contracts are parts of the same transaction and must be so construed; and·neither party will be heard to say that they did not contemplate a dissolution of marriage in the face of the conclusive proof to the contrary in the written evidence of their agreement. .

The remaining inquiry is, whether the amount of alimony, $2,000, awarded to the defendant is equitable in view of the facts as disclosed by the proofs.    At the time of her marriage with the plaintiff the defendant was engaged as administratrix under the will of her first husband, —— Barrett, in conducting a hardware store at West Union, Custer county, with her brother, John Squires.    The Barrett estate at said time owned a half interest in said business· plus the sum of $135.    By provision of the will the defendant was entitled to the income from said property so long as she remained single, but in case she remarried it was to be divided between her two daughters, issue of her first marriage.    Shortly after the marriage of the parties hereto the defendant turned over to the plaintiff the property held by her belonging to the Barrett estate, and the latter became her successor, ostensibly as a member of the firm aforesaid, and which arrangement continued until the month of January 1889.    According to the testimony of the defendant and Squires, the stock of hardware and bills receivable, as shown by an invoice taken at the time the plaintiff took possession thereof, amounted to $4,150 over and above the liabilities of the firm.    To one-half of this amount she adds $135, the sum due from said firm to the estate, making a total of $2,210 as the amount turned over by her to the plaintiff at the time.    She testifies also that she advanced to plaintiff $100 soon after their marriage, at another time $125, and at a third time $85; that he received $275, the proceeds of a house and lot owned by her at the time of her second marriage; that he subsequently

· 60

converted to his own use money belonging to said estate
amounting in the aggregate to $219, making a total in-
debtedness to herself and to the said estate of $3,014.
It is evident that the business was prosperous, since Mr.
Squires testified that in January, 1889, he sold his half in-
terest in the firm to the plaintiff for $6,700, and which
amount was then the reasonable value of the plaintiff's in-
terest.

Both the defendant and her attorney who participated in
the settlement above referred to testified that the money
and property mentioned therein were understood to be the
proceeds of the property of the Barrett estate, for which
she is required to account as administratrix, and which, ac-
cording to the testimony of the attorney, Mr. Kirkpatrick,
was between $300 and $400 less than the amount in which
the plaintiff was in fact indebted to said estate. The find-
ing of the district court was in accordance with this con-
tention, and is, we think, fully warranted by the evidence.
The court found that the plaintiff was, at the time of the
trial, possessed of property, over and above all liabilities,
of the value of $8,500, and which, according to the evi-
dence, is not unreasonable. In fact the evidence shows
him to be worth considerably more than the amount above
named, and which, with the exception of two "claims" in
Custer county estimated by him to be worth $4,500, was
accumulated since their marriage, and the product of the
property held by the defendant in trust for her children.
There is also reason to doubt the completeness of the
plaintiff's showing with respect to his assets and liabilities,
while it is conclusively shown that he at one time at-
tempted to make an assignment with the avowed purpose
of defeating the defendant's claim of alimony. It cannot,
in view of the facts stated, be said that the judgment of
$2,000 is excessive. A large discretion is conferred upon
the district court in such cases, and to warrant an inter-
ference by this court there must have been an evident

abuse of discretion.    The decree of the district court is in all things

AFFIRMED.

THE other judges concur.