### HAGGERTY et al. v. KEY et al.

No. 13664—Opinion Filed Sept. 16, 1924.

**1. Appeal and Error — Review of Equity Case—Judgment.**

This being a purely equitable case, this court will consider the whole record, weigh the evidence, and where the judgment of the trial court is clearly against the weight of the evidence, will render, or cause to be rendered, such judgment as the trial court should have rendered.

**2. Cancellation of Instruments—Grossly Inadequate Consideration—Relief.**

The principle of equity applies that where there is a total want of gross inadequacy of consideration, slight evidence of fraud, overreaching, or undue influence will justify the cancellation of deeds, the execution and enforcement of which shocks the conscience of the chancellor.

**3. Fraud—Definition.**

Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise, and are resorted to by one individual to get an advantage over another by false suggestions or by the suppression of the truth. No definite and invariable rule can be laid down as a general proposition defining fraud, as it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.

**4. Deeds—Rescission—Failure of Consideration.**

Where a party, who undertook, in consideration of a conveyance of a half interest in land that had been partitioned under a final judicial decree, to act as agent and procure attorneys for an owner in recovering it, failed to perform the agreed services, the owner has a right to rescind the conveyance of the half interest. There is no good reason for allowing such party to retain the title to complainant's property when the purpose for which it was obtained has been abandoned or cannot be accomplished.

**5. Fraud—Intent not to Perform Promise.**

A promise accompanied with an intention not to perform it, and made by the promisor for the purpose of deceiving the promisee and inducing him to act, where he otherwise would not have done so, constitutes fraud.

**6. Contracts — Unlawful Contracts Unenforceable in Equity.**

Equity will not aid or assist in the enforcement of a contract founded upon the violation of the statute law of the state.

**7. Invalidity of Contract to Recover Land.**

Record examined, and held, that there never was any honest intention of carrying out the contract; if there ever were such an intention, it was abandoned, and if it had not been abandoned it was impossible of accomplishment, all, or either of which, are fatal to the validity of the contract.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Okmulgee County; Mark L. Bozarth, Judge.

Action by Martha Haggerty and Sol Haggerty against John E. Key and Robert T. Whittenton to quiet title to land. Judgment for defendants. Plaintiffs bring error. Reversed.

Cochran & Ellison, for plaintiffs in error.

R. E. Simpson and Hummer & Foster, for defendants in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Okmulgee county by Martin Haggerty and Joe Haggerty, plaintiffs in error, plaintiffs below, against John E. Key, and Robert T. Whittenton, defendants in error, defendants below, to quiet title to the southwest quarter of the southwest quarter of section 33, township 12 north, range 12 east, occupied by them as a homestead.

The parties to this action will be referred to as plaintiffs and defendants as they appeared in the lower court.

The petition, in substance, alleges that the land in question was a portion of an 160-acre allotment of Thomas Haggerty, a deceased freedman of the Creek Nation, who was a son of the plaintiffs, which land, under the law as construed at the time of the death of Thomas Haggerty, should have gone to Martha Haggerty as the citizen mother of the said Thomas Haggerty, the plaintiff, Sol Haggerty being a noncitizen of the Creek Nation; that, after the death of the said Thomas Haggerty, Ludie Haggerty, a noncitizen of the Creek Nation, appeared and claimed to be the wife of the said Thomas Haggerty, and claimed to be entitled to inherit an interest in his estate as the surviving wife of said Thomas Haggerty.

In a partition proceeding in the district court of Okmulgee county, the north 80 acres of the allotment was set off to J. L. Terwilliger, having been transferred by a deed from Ludie Haggerty of her interest in the allotment as a surviving wife, 40 acres was set off to plaintiff Sol Haggerty in said decree, and the 40 acres in litigation in this case was set apart to the plaintiff Martha Haggerty as her part of the said inheritance. That, after the decree in partition had been entered and the time had expired for filing a motion for new trial the plaintiffs employed attorneys, who filed a petition to vacate said

decree, which was overruled by the trial court, and the case appealed to this court in the case of Haggerty v. Terwilliger, 67 Okla. 194, 169 Pac. 872, in which this court held that the first decree had become final, and that the errors complained of could not be raised in the motion to vacate but only by a direct appeal from the judgment, and that the plaintiffs had lost their opportunity for that by the expiration of the time limit, which opinion was filed in this court December 11, 1917, and rehearing denied January 16, 1918, and said opinion became the final adjudication of the rights of the parties to the lands in controversy.

That, on the 3rd day of March, 1920, thereafter, one John W. Woods advised the plaintiffs, who were ignorant and could neither read nor write, that he could have said decree of partition set aside and vacated, and that he could have a new decree entered, declaring the plaintiff, Martha Haggerty, to be the sole owner of the entire 160 acres, and deprive all other parties of any interest therein, and that the 80 acres had great value as it was producing large quantities of oil and was worth more than $200,000, and that if the plaintiffs would give him a deed covering an undivided one-half interest in the coal, oil, and gas and other minerals under the 80 acres, known as the Terwilliger land, and the 40 acres set aside to Sol Haggerty, that he would institute an action, at his own expense, and employ competent attorneys without expense to the plaintiff, to set aside said decree and recover said property for Martha Haggerty, in consideration of the execution of said deed, and that they did not execute said deed to him, which they understood to cover a one-half interest in the coal, oil, and gas under the 120 acres, but was not to include the 40 acres already set aside to the plaintiff Martha Haggerty, which was in no way in controversy and to which there were no adverse claimants, but that John W. Woods, either by mistake or fraudulent design, included the 40 acres in said deed; that, thereafter, the said John W. Woods informed the plaintiffs that he would be unable to carry out this agreement, but had procured the defendants herein to carry it out in his stead, and that, thereafter, on the 6th day of March, 1920, the said John W. Woods executed a quitclaim deed, covering the property acquired by him from these plaintiffs to the defendants, and that the defendants were fully advised of all the conditions of the contract between them and the said John W. Woods, and that there was no other or further consideration paid to them for said deed. That the said John W. Woods and defendants well

knew that the decree, which they agreed to have vacated, had been appealed to the Supreme Court of the state of Oklahoma, and had been affirmed several years prior to the execution of said deed, and that the same had become final and conclusive, and was not subject to being vacated, and that said agreement to have the same vacated was of no value to these plaintiffs, and that said deeds, above mentioned, were obtained without consideration. That the defendants represented that they would and agreed to prosecute said litigation to the highest court of the United States, but that they did not make any effort to attempt to vacate the same. That thereafter the said J. Terwilliger brought an action in the district court of Okmulgee county to quiet title in him to the 80 acres claimed by him against the plaintiffs and defendants in this action and that upon the day the case was set for trial the defendants herein quitclaimed all their rights and claims herein to the said J. L. Terwilliger, and wholly abandoned said action without a trial of the same, and received the sum of $500 therefor. That the plaintiffs have demanded that defendants surrender any interest claimed by them in the 40 acres in controversy for the reason that the same was included by mistake or by fraudulent design, and for the further reason that they had failed to carry out said agreement; that the defendants refused to reconvey said property, and prayed that the deeds be set aside and vacated, and that the defendants be decreed to have no interest in these lands, and that the title be quieted in them.

To which petition the defendants answered by way of general denial, and for further answer denied any knowledge of any fraud or misrepresentation on part of the defendant, John W. Woods, and denied that the defendants were ignorant and unable to read and write and unfamiliar with business affairs, and allege that they understood all the details of the said transaction with the said Woods, and that they understood that the deed to Woods included a one-half interest in the mineral rights under the 40 acres in controversy, and that they never claimed anything to the contrary until after the suit mentioned in plaintiffs' petition was settled with their full knowledge and consent and after they had received part of the money paid by Terwilliger in the settlement of the lawsuit; that they joined in said compromise of said lawsuit; that they had purchased the interest of said John W. Woods for a valuable consideration without knowledge of any misrepresentation or fraud on the part of the said John W. Woods; that they were the owners of a one-half interest

and that their title should be quieted as against these defendants, and prayed that the petition be dismissed and title quieted in them to their one-half interest.

Upon these issues the cause proceeded to trial before the court without the intervention of a jury, and after all the evidence was heard the court rendered judgment in favor of the defendants and against the plaintiffs, declaring the defendants to be the owners in fee of an undivided one-half interest in the mineral rights under said land and quieted title to the same in the defendants and enjoined the plaintiffs from asserting or maintaining any claim whatsoever thereto, and against the plaintiffs for costs,

A motion for new trial was filed, heard, and overruled. Exceptions reserved by plaintiffs and the cause comes regularly to this court upon appeal from said judgment.

Attorneys for plaintiffs urge that, this being a suit in equity, this court should review the evidence disclosed by the record and render the opinion that the lower court should have rendered in the case; that fraud had been perpetrated upon the plaintiffs in procurring said quitclaim deed for the purpose of instituting an action to set aside a solemn judgment of the district court, which had been affirmed by this court on appeal; that a fraud had been perpetrated upon the plaintiffs by John W. Woods in including the 40 acres in controversy in said deed, when the same was in no way in dispute and the title had been vested by solemn decree in the plaintiff, and that no consideration had been given or attempted to be given for said deed.

The rule to be applied here is set forth in the case of Marshall v. Grayson et al., 64 Okla. 45, 166 Pac. 86, which, as stated by the court in its opinion, is as follows:

"This being a purely equitable case, this court will consider the whole record, weigh the evidence, and where the judgment of the trial court is clearly against the weight of the evidence, will render, or cause to be rendered, such judgment as the trial court should have rendered. Salina Pevehouse v. Adams, 52 Okla. 495, 153 Pac. 65; Success Realty Co. v. Trowbridge, 50 Okla. 402, 150 Pac. 898; Asher v. Doyle, 50 Okla. 460, 150 Pac. 878; Schock v. Fish, 45 Okla. 12, 144 Pac. 584.

"The principle of equity applies that where there is a total want or gross inadequacy of consideration, slight evidence of fraud, overreaching, or undue influence will justify the cancellation of deeds the execution and enforcement of which shocks the conscience of the chancellor."

This rule, in cases of purely equitable cognizance, has been the universally established rule of this court in all of its opinions, both before and since the above opinion was handed down. It, therefore, becomes necessary to briefly examine the facts in this case. The sole and only consideration, as disclosed by the evidence, for the giving of the deed from the plaintiffs to Woods was that he would undertake at his own expense to procure attorneys to institute a proceeding to set aside a solemn judgment of the district court of Okmulgee county, which had been affirmed on appeal by this court and had become final as to all issues involved in the partition proceeding over three years before this transaction, whereby the title to the land, which is contracted to be set aside, had become vested by judicial decree in Terwilliger, and the 40 acres in controversy here had become the absolute property of the plaintiff Martha Haggerty. The evidence of four witnesses, two of whom were the plaintiffs, and F. H. Behn, a minister, who was called in to read over the deed, about to be executed by the plaintiffs, who could neither read nor write, and the testimony of Ben Haggerty is that only 120 acres was described in the deed at the time it was executed by plaintiffs to Woods and their testimony is positive that the 40 acres in controversy was not included at that time, and, if their testimony is to be believed, this 40 acres was inserted in the deed between the time they signed it and the time Woods turned it over to the defendants. Woods was living in Okmulgee county and was accessible to process of the court and yet for some reason his testimony was not sought by the defendants nor was he produced as a witness by them in this cause.

The evidence of Ben Haggerty is to the effect that Woods was to give him $25 to secure the signatures of the plaintiffs to a deed to an one-half interest, and that the $25 was paid to him by the defendant Key. This payment, however, is denied by Key.

The evidence further discloses that the deed from the plaintiffs to Woods and the deed from Woods to the defendants were acknowledged on the 6th day of March, 1920, and were filed for record by the defendant Key on the 8th day of March, 1920, and that both deeds were returned to Key by the county clerk on the 18th day of May, 1920, yet on the trial the defendants could produce the deed from Woods to them but when called upon could not produce the original deed from plaintiffs to Woods, nor did they give any satisfactory explanation as to why original deed, executed by the plaintiffs, was not available, and this becomes significant when the testimony of four

witnesses had been that the original deed as signed by plaintiffs did not contain the 40 acres in controversy here.

The testimony further shows that the defendants had some conversation with Woods some time during the day in regard to this deed and that late in the evening of the 6th day of March they took over the deed from Woods to them with full knowledge that the consideration for the deed was that this action at law should be instituted to recover the 120 acres for Martha Haggerty, and that they assumed the contract to institute this proceeding, yet covering a period of about four months after they had the deed and after they had assumed this contract no action had been taken by them to carry out this contract, nor was any satisfactory reason given for such failure; and that when Terwilliger instituted an action to cancel the deed from the Haggertys to Woods and from Woods to them they took no substantial action to defend or to make the claim of the plaintiffs good to the 120 acres, nor did they employ counsel for the plaintiffs to obtain a cancellation of the claims of Terwilliger to the land, but plaintiffs had to and did employ their own counsel, and when the cause came up for trial in the district court they made an independent settlement of their undivided one-half interest in the Terwilliger tract for $500, although the evidence shows the property to have been worth, at that time, between two and three hundred thousand dollars, yet, notwithstanding the great value of the land in litigation, they made a separate deed to Terwilliger of their entire one-half interest for $500, the exact amount they claimed to have paid Woods, and the plaintiffs then, after the defendant had abandoned them in this action, made a separate settlement in the lawsuit for the sum of $700 through their attorneys. The action on part of the defendants shows very conclusively that at no time did they ever have any confidence in winning the suit that they contracted to institute, and that they never made any honest effort to carry out the contract with the plaintiffs. On face of the record, such an action could not have been of any avail if it had been instituted, for the rights of all the parties had been judicially determined in the partition proceedings by the trial court and by appeal to this court and mandate of this court, which was introduced in evidence, disposed of the rights of all the parties finally over three years prior to the making of this contract, and the plaintiffs were deprived of a one-half interest in the moiety they had received by the judgment of the court of

the land they had inherited from their deceased son.

The case of Brady v. Cope (Tex.) 187 S. W. 678, is directly in point, where it was decided:

"Where a party who undertook, in consideration of a conveyance of a half interest in land sold under judicial sale, to act as agent and attorney for an owner in recovering it, failed to perform the agreed services, the owner or those in privity with her could rescind the conveyance of the half interest."

Fraud has been defined by this court, in the case of Van Winkle v. Hinkle et al., 77 Okla. 34, 186 Pac. 942, in the language of the late Justice Kane, as follows:

"Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise, and are resorted to by one individual to get an advantage over another by false suggestions or by the suppression of the truth. No definite and invariable rule can be laid down as a general proposition defining fraud, as it includes all surprise, trick, cunning, dissembling and any unfair way by which another is cheated."

In the case of Mack v. Consolidated Water Power Co., 101 Fed. 869, the court held as follow:

"There is no good reason for allowing it to retain the title to complainant's property when the purpose for which it was obtained has been abandoned or cannot be accomplished."

The last mentioned case seems to cover this case fully for, in this case there never was any honest intention of carrying out the contract, if there were such an intention, it was abandoned, and if it had not been abandoned it was impossible of accomplishment, all, or either of which, under the decisions, are fatal to the validity of the contract.

This court, in the case of Blackburn v. Morrison et al., 29 Okla. 510, 118 Pac. 402, in a case involving similar facts, held:

"A promise accompanied with an intention not to perform it, and made by the promisor for the purpose of deceiving the promisee and inducing him to act, where he otherwise would not have done so, constitutes fraud.

"In an action to cancel a deed alleged to have been procured by false and fraudulent promises, a specific averment that the grantee did not intend at the time he made said promise or contract to carry out the same is not necessary if from the facts alleged the existence of his fraudulent intent not

to carry out his contract can be clearly inferred."

In our opinion, under the record and facts in this case, there never was a case presented that justifies more strongly the intervention of the equity power of this court. Woods, the first grantee, through whom the defendants claim their title, under the contract, as stated above, on the same day and within a few hours after the execution of the deed, abandoned the same and sold to these defendants showing by his acts that he never intended to carry out his contract with these plaintiffs, and the defendants admit that they knew of the contract and say that they took over the Woods contract, but they never, by act or deed, made any honest attempt to carry out said contract, and, in our opinion, never intended to carry out the contract, and are before this court, as a court of equity, asking that this unconscionable contract be declared to vest in them the title to the 40 acres, remaining to these ignorant negroes, occupied by them as their home, and, in our opinion, the language used by this court, in the case of Bruner et ux. v. Cobb et al., 37 Okla. 228, 131 Pac. 165, which has been cited and quoted from with approval by this court in many cases, is applicable here, which is as follows:

"It seems to be a common practice in the part of the state from which this case comes for unscrupulous and designing men to prey upon the ignorant and defenseless, and in many instances the helpless Indians and freedmen. These unfortunate classes have our undivided sympathy, for, with an intelligent and scheming white man, they have an unequal chance even at the best; * * * Ignorant freedmen (negroes), such as plaintiffs in error, have a right to rely upon honesty of purpose and fair dealing at the hands of white men, and this is doubly true as to those who hold official positions of trust and honor; they have been taught to depend upon the superior intelligence and integrity of the white race; and while the law recognizes no distinction of race or color, and is not, generally speaking, the guardian of the ignorant, yet it will at all times, especially in such cases as the one at bar, throw its protecting arms about the weak and defend their rights against the wicked designs of the strong, when the object of these designs is to take an unfair and undue advantage of their weakness and ignorance. We feel that the facts detailed in the record in the instant case are such as to demand at our hands the relief prayed for by plaintiffs in error."

The statute law of this state has made it a criminal offense for any one to practice or be engaged in "exciting groundless judicial proceedings." Equity will not aid or assist in the enforcement of a contract founded upon the violation of the statute law of the state.

It is urged by attorneys for defendants that the plaintiffs signed a division order for the sale of the oil run from the 40 acres, in controversy here, whereby they were to be paid only an undivided one-half of the royalty, and that this was an act of affirmance of the deed, executed by them to Woods, but, in view of the after-conduct of the defendants in abandoning the contract with the plaintiffs and deserting them at the trial of the case, which Terwilliger had instituted against them, by selling their interest for $500, and in not paying counsel to defend the interests of the plaintiffs in said action, but in leaving the plaintiffs to their own resources in the matter, did, in our opinion, both in law and equity, operate as against this contention urged by attorneys for defendants. As has been said before, it clearly appears from the record in this case that Woods never intended to carry out his contract with the plaintiffs and the actions of the defendants herein after they came into the case show that there never was any honest effort upon their part to carry out this contract, and that they never intended to carry out their obligation, although they admit they assumed the obligation to carry it into effect, and we are led to the inevitable conclusion that, in the first instance, they assumed the impossible, and, in the second instance, that it never was the intention of either Woods or themselves to try to carry the contract into execution, except to obtain title to the 40 acres in controversy, without any consideration to the plaintiffs, either in money, property, or service.

Under the state of the record in this case, we are of the opinion, after weighing the evidence, that the judgment of the lower court is clearly against the weight of the evidence and we are, therefore, of the opinion that the judgment of the court should be and is hereby reversed, with instructions to the trial court to set aside the judgment, heretofore rendered in this cause, and to render judgment in favor of the plaintiffs, cancelling the deed executed by plaintiffs to John W. Woods and the deed executed by John W. Woods to the defendants herein, and to quiet title in the plaintiffs against the defendants, and render judgment for their costs herein expended.

By the Court: It is so ordered.