## OPPERUD et al. v. BUSSEY.

No. 23310.  June 18, 1935.

Simons, McKnight, Simons, Mitchell & McKnight, for plaintiffs in error.

W. E. Rice and J. F. Murray, for defendant in error.

PER CURIAM. This appeal involves an attorney's lien claimed by the plaintiffs in error, M. L. Opperud and O. B. Martin, who are practicing attorneys and represented the defendant in error, Telee Bussey, the plaintiff in the original action which they filed for her in the district court of Kay county, Okla., for divorce and alimony.

There is no dispute as to the facts. The said plaintiff, now defendant in error, agreed with said attorneys when she employed them that they should receive 12½ per cent. of whatever amount was awarded her by the judgment of said court, together with whatever fees might be allowed by the court. When the suit was instituted, pursuant to said contract of employment, the plaintiff, through said attorneys, made application to the court for a temporary attorney's fee, and was allowed the sum of $150, which by agreement was later reduced to the sum of $100 and paid by the original defendant, who is not involved in this controversy.

On the final trial of the divorce action the court entered a judgment in favor of the plaintiff, the defendant in error herein, granting her a divorce, the custody of five children, $75 per month for their support, alimony in real and personal property of the value of approximately $8,800, and the sum of $150 attorney's fee, which fee was duly paid by said original defendant.

The cause was appealed to this court (Bussey v. Bussey, 148 Okla. 10, 296 P. 401), whereupon the plaintiff, through her said attorneys, filed another application for attorney's fees and was allowed the further sum of $100, which was paid to plaintiffs in error by said original defendant. The agreement for attorney's fees was not disclosed to either the district court of Kay

county or the Supreme Court at any stage of the proceedings.

After the judgment of the lower court was affirmed and the mandate issued and spread of record, it seems that there was some delay in satisfying said judgment, probably caused by the original plaintiff's efforts to rescind and cancel said contract for attorney's fees and to collect said judgment in full without satisfying the claims and demands of the plaintiffs in error based on their contract. At any rate, the plaintiffs in error took steps to protect themselves from such contingency by causing to be entered on the appearance docket and also on the judgment docket a notation to the effect that they claimed an attorney's lien upon said judgment, and also by serving a written notice to the same effect on the original defendant's attorney of record.

Thereupon the plaintiff below, defendant in error herein, filed her motion in said court in said cause showing and alleging the above facts in detail and asking that said attorney's lien be adjudged to be void and said entries vacated and stricken on the grounds that said contract for attorney's fees was contrary to public policy and illegal and void, and, not having been disclosed to either the trial court or the Supreme Court, a fraud was perpetrated on said courts.

A motion was then filed by the plaintiffs in error to strike the above motion for the reasons that: First, the court had no jurisdiction; second, that the matters set out therein were not proper and germane to the issues in the case; and, third, that the mandate of the Supreme Court having been filed and spread of record, "no further litigation on other matters should be litigated herein, such as are presented in said motion." This motion was overruled, and the plaintiffs in error excepted.

Thereafter they filed their response to the first motion, admitting the allegations therein respecting the contingent fee contract, the payments of the attorney's fees in both courts, and the making of said entries and the service of said notice, and alleging that such entry on the appearance docket was not made or such notice served until after the plaintiff had employed counsel and was attempting to abrogate and rescind said contract; that they also caused the entry to be placed on the judgment docket and by reason thereof they claimed to have an interest in all the money and property (including real estate) recovered by the plaintiff in

the final judgment of the court in said case, itemizing it with the values thereof. They denied that the contract for fees was void, that any fraud was perpetrated on the court, and set out in detail the nature of the services rendered, the difficulties met and overcome in the trial of the case, and that a great amount of time was spent in preparation and the trial of the lawsuit.

In this response were certain revelant and appropriate allegations to support a charge on a quantum meruit basis for $1,200 and a judgment was prayed for awarding them a 12½ per cent. interest in all the property recovered, or in the alternative, for $1,200; but all reference to a quantum meruit, both in such pleading and the prayer thereof, was subsequently stricken by permission of the court when said motion was heard.

The plaintiff below filed a reply to this response reiterating some of the matters contained in her original motion, denying their right to recover on a quantum meruit, and asking that the relief prayed for therein be denied and she have judgment as prayed for in her motion.

The matter came on for hearing in due time at which time the plaintiffs in error again objected to the jurisdiction of the court, which objection was again overruled and exception allowed. The court after hearing the matter sustained the motion of the defendant in error and canceled and vacated the entries claiming an attorney's lien and the notice thereof, and held that the plaintiffs in error had no right, title or interest in said judgment and enjoined them from asserting any claim thereto.

From this judgment the plaintiffs in error appeal to this court, assigning as error: First, that the district court of Kay county erred in overruling their objections to the jurisdiction of said court and assuming jurisdiction and authority to hear said motion to strike filed by the defendant in error; and, second, erred in holding that the contingent fee contract in question was illegal and void and against public policy.

Plaintiffs in error in support of their first assignment of error contend that their former client cannot usurp the style of the case and file a motion to strike; that such procedure is not proper or contemplated by the statute; that she should have filed the bond provided for in section 4208, O. S. 1931, and then they could have filed a separate action thereon for their fee, or if no bond were given, the defendant in error

could have filed a separate action to cancel the lien. They contend that she is attempting to maintain a separate action in the original divorce case, which has been terminated.

We cannot agree with them. The statute surely contemplates that the attorney's lien may be litigated in such original action. Section 4206, O. S. 1931, provides that after judgment, the attorney's lien may be effective against the judgment debtor, "by entering same in the judgment docket opposite the entry of the judgment, and such attorney may enforce any lien provided for by this act in any court of competent jurisdiction by action filed within one year after he becomes aware of such compromise, **or judgment may be rendered on his motion in the case in the court in which the suit was brought."** (Emphasis ours.) True, the judgment so provided for is against the judgment debtor, but it is evident that under such statute the case is not closed and concluded in so far as the attorney's lien is concerned, but is kept open by an appropriate entry in the judgment docket. It was this entry the defendant in error sought to strike and cancel. It constituted a cloud on her judgment, and of course interfered with the collection thereof, and, if invalid, we see no good reason why she cannot file and prosecute a motion such as was filed in the case to have it removed and canceled.

For example, suppose a court clerk should misinterpret a journal entry of judgment and make an erroneous entry on the judgment docket, or make an entry when in fact no final judgment had been rendered. Could there be any objection to a correction or a cancellation of said judgment by proper motion? Would the injured party be compelled to institute a separate action for such purpose? True again, in such a case, all parties concerned are parties to the action, while here the plaintiffs in error were not parties. But the statute authorizes the entry complained of and gives them the right to proceed as the moving party the same as a plaintiff. So after all, there is no real difference on that score.

Furthermore, the plaintiffs in error had a right in the divorce case to prosecute their claim and have their fee fixed, lien established, foreclosed and paid out of the judgment if they were entitled to such relief. Estes v. Hartshorne, 90 Okla. 40, 214 P. 698.

We, therefore, are of the opinion that when they apparently took steps in that direction, the defendant in error had the right to resist and challenge their right so to do at any stage of the proceeding by any appropriate pleading, and did not have to wait until the plaintiffs in error brought said matter to trial on their own application at such time as suited their convenience.

We therefore conclude that the lower court had jurisdiction to hear and determine said motion to strike.

As to the second assignment of error, that the court erred in holding said contingent fee contract void, we find that such judgment is in accordance with practically every decision passing directly on such question.

This court, in so far as we are advised or can ascertain, has not passed directly on the proposition, although in Cutchall v. Cutchall, 94 Okla. 212, 221 P. 457, there had been a contingent fee contract, which later was superseded by a written property settlement, including a provision for payment of fees, so this court properly held that the question of the legality of the contract for a contingent fee was not before it. However, in that decision was cited with apparent approval the case of In re Sylvester's Estate (Iowa) 192 N. W. 442, with the following quotation:

"A contract between attorneys and their client to obtain a divorce for her and to settle property rights, providing for a contingent fee, held illegal as contrary to public policy."

That case involved a contingent fee in a divorce action which had been paid by the deceased. The suit was brought to recover it, and the Supreme Court held that recovery of the money could be had. We read in the opinion:

"But the contract in the instant case involved more than the mere question of the payment of a contingent fee to appellees for legal services. It involved an agreement to pay an attorney's fee contingent upon the procurement of a divorce and the adjustment of property rights in connection therewith. Such a contract, having for its object such a purpose, is one that involves a matter of public policy. The proper maintenance of the marriage relation is a matter of public concern. In general, a contract, the object of which is the procurement of a divorce, is against public policy and void. Barngrover v. Pettigrew, 128 Iowa, 533, 104 N. W. 904, 2 L. R. A. (N. S.) 260, 111 Am. St. Rep. 206; Pereira v. Pereira, 156 Cal. 1, 103 P. 488, 23 L. R. A. (N. S.) 880, 134 Am. St. Rep. 107; Hamil-

ton v. Hamilton, 89 Ill. 349; Jordan v. Westerman, 62 Mich. 170, 28 N. W. 826, 4 Am. St. Rep. 836; Wilde v. Wilde, 37 Neb. 891, 56 N. W. 724; James v. Steere, 16 R. I. 367, 16 Atl. 143, 2 L. R. A. 164.

"A contract between an attorney and client, providing for the payment of a fee to the attorney contingent upon the procurement of a divorce for the client, is against public policy and illegal and void. Such a situation involves the personal interest of the attorney in preventing a reconciliation between the parties, a thing which the law favors and public policy encourages. Newman v. Freitas, 129 Cal. 283, 61 P. 907, 50 L. R. A. 548-551. See, also, Muckenburg v. Holler, 29 Ind. 139, 92 Am. Dec. 345; Speck v. Dausman, 7 Mo. App. 165. The sancity of the marriage relation, the welfare of children, the good order of society, the regard for virtue, all of which the law seeks to foster and protect are ample reasons why such contract should be held to be contrary to public policy. We therefore hold that the contract in controversy in this suit was upon its face against public policy, and unenforceable at the instance of either party."

In Newman v. Freitas, supra, par. 2 of the syllabus reads as follows:

"Defendant agreed in writing to pay an attorney a contingent fee of one-third of all community property he might secure in an action for divorce against her husband, or by reason of any compromise or settlement thereof. The attorney assigned the contract to plaintiff, who sued for specific performance. Held, that the contract was void and unenforceable, as against public policy."

In the opinion the court cited numerous decisions to the effect that "the contract is in its nature against the policy of the law and contrary to good morals," and said:

"The principle recognized in these and other like authorities applies with equal force to a contract between the wife and an attorney, where, as in the case of this contract, the enjoyment of its benefits by one party, to wit, the attorney, depends upon procuring the divorce. Several cases have been before this court in which there were contracts similar to the one under consideration,—for instance, Reynolds v. Reynolds, Sharon v. Sharon, and White v. White, supra. In none, however, was it necessary to determine the question whether or not such a contract between a married woman and an attorney, in contemplation of divorce proceedings, by which the attorney was to receive a share of what was recovered, was lawful. In at least one of these cases, however, it was intimated that such contract was considered invalid. But in some of the other states the question has been directly decided adversely to such contract. Jordan v. Westerman, 62 Mich. 170, 28 N. W. 826, was such a case. There the plaintiff, on the day she commenced the proceeding against her husband for divorce, entered into a written contract with defendants, who were attorneys, by which she retained them to prosecute the suit, and to pay the defendants, as compensation for their services and costs which they were to advance, whatever sum the husband should be compelled to pay by the court or otherwise. The husband, by himself and counsel, endeavored to effect a settlement and reconciliation; but the defendants, as plaintiff's counsel, resisted such efforts until the husband paid over to them, as costs, alimony and expenses, the sum of $4,500. The divorce was obtained, and the defendants paid to the plaintiff half of the sum received, and retained the balance under the terms of their contract. The plaintiff brought the suit in question to recover the balance of the money paid over by the husband to defendants. The Supreme Court of Michigan, in passing upon the contract in question, says: 'Such contracts are against public policy for another reason: Public policy is interested in maintaining the family relation. The interests of society require that those relations shall not be lightly severed, and that families shall not be broken up for inadequate causes or from unworthy motives; and, where differences have arisen which threaten disruption, public welfare and the good of society demand a reconciliation, if practicable or possible. Contracts like the one in question tend directly to prevent such reconciliation, and, if legal and valid, tend directly to bring around alienation of husband and wife, by offering a strong inducement, amounting to a premium, to induce and advise the dissolution of the marriage ties as a method of obtaining relief from real or fancied grievances, which otherwise would pass unnoticed.' Contracts for contingent fees paid attorneys were not tolerated at all at common law, but in this and perhaps most of the states such contracts are allowed, if not favored. This is on the ground that otherwise a party without the means to employ an attorney and pay his fee certain, and having a meritorious cause of action or defense, would find himself powerless to protect his rights. In divorce cases, however, the law has taken care that the wife shall not be without assistance, in proper cases, either to prosecute or defend such actions. The court, in its discretion, may require the husband to pay as alimony any money necessary to enable the wife not only to support herself, but also to prosecute or defend the action, and is given ample power to enforce such order. The reason, or necessity, therefore, does not exist in such cases, as in the others, for allowing contingent attorney's fees, and, where the reason ceases, the rule or law also ceases. By the contract in question the attorney was to have a portion of, or an inter-

est in, the community property to be recovered and a division of the community property could take place only upon a dissolution of the marriage. Civ. Code #146. This prospective share in the community property, being the greater interest, was the controlling consideration on the part of Long. Hence he was directly and greatly interested not only in preventing any reconcilation, but in bringing about a divorce. As he assigned this contract before the same had been performed on his part, the plaintiff also became interested with him. By a process of assignments this interest might be extended, as the exigencies of the case might require, so as to include many persons of means and influence who would lend their assistance in the accomplishment of the same purpose, —in other words, create a brokerage and form a syndicate in the business of contingent divorce contracts. We think the policy of the law is against all contracts of the kind, that they should be held illegal and void, and that the courts should refuse to aid their enforcement."

The reference to the court's power to require the payment of whatever is necessary to enable the wife to prosecute an action is peculiarly applicable as our law includes such provision (sec. 670, O. S. 1931).

This case was followed by the same court in Ayres v. Lipschutz (Cal. App.) 228 P. 720; and also in Coleman v. Sisson (Mont.) 230 P. 582; and Klampe v. Klampe (Minn.) 163 N. W. 295.

In Baca v. Padilla (N. M.) 190 P. 730, which involves a contingent fee for prosecuting a criminal case, the court discusses the proposition generally, saying:

"Many cases will be found cited in the note to section 421, Thornton on Attorneys at Law, upholding the validity of contracts for contingent fees generally. We do not believe any case will be found which upholds the validity of a contingent fee beyond the rule of necessity, that is to say, the courts will not uphold such contracts where provisions may be made for the prosecution of the suit by the court in other ways. The most familiar illustration is that offered by suits for divorce and alimony. Contracts have been made by attorneys to prosecute such suits for a designated portion of the alimony recovered, and all such contracts, so far as we are aware, have been declared invalid upon one ground or the other, i. e.: (1) That there was no necessity for permitting such contracts, because the court was authorized by law to require the husband to pay suit money, thus enabling the wife to prosecute her action; (2) that it is the policy of the law that reconciliation should be effected between husband and wife, and the attorney, having a great interest in the amount of alimony recovered, which depended, of course, upon the prosecution of the suit to a conclusion, would at all times be standing in the way of such reconciliation This matter, in so far as divorce cases are concerned, was ably discussed by the Supreme Court of California in the case of Newman v. Freitas, 129 Cal. 283, 61 P. 907, 50 L. R. A. 548. Many other similar cases will be found referred to in the note to the case of Roller v. Murray, 38 L. R. A. (N. S.) 1202; Barngrover v. Pettigrew, 2 L. R. A. (N. S.) 260. Many of these cases, while not discussing the reason for the rule, held that such contracts are void as against public policy."

In 30 A. L. R. 188, is an annotation on the subject announcing the general rule as above and citing numerous authorities, Jordan v. Westerman, supra, being designated as the leading case on the subject.

In 2 R. C. L. 1044, par. 125, the rule is announced as follows:

"So, it is well established that any contract made between a wife and her attorney in advance of a decree for divorce and alimony, by which she agrees to pay to such attorney, as compensation for his services, a certain portion of the alimony which may be awarded, is void upon the grounds of public policy."

In McConnell v. McConnell (Ark.) 136 S. W. 931, 33 L. R. A. (N. S.) 1074, the opinion says:

"We now come to the question of attorney's fees. It is shown that the plaintiff made an agreement with her attorney that he should receive a portion of whatever property, real or personal, that should be awarded her out of her husband's estate. An agreement by a wife to pay her attorney, in a suit for divorce and alimony against her husband, a certain per cent. of such sums as the court should award her for alimony, is void as against public policy. 2 Nelson Div. & Sep. vol. 2, sec. 88; 14 Cyc. 763; Van Vleck v. Van Vleck, 21 App. Div. 272, 47 N. Y. Supp. 470; Jordan v. Westerman, 62 Mich. 170, 4 Am. St. Rep. 836, 28 N. W. 826. In the last case the court said (quoting from syllabus): 'Public policy is interested in maintaining the family relation, the interests of society requiring that' such relation be not lightly severed, and that families shall not be broken up for inadequate causes or from unworthy motives; and where differences have arisen, which threaten disruption, public welfare and the good of society demand a reconciliation, if practicable or possible, and for these reasons a contract which tends to prevent such a reconciliation is void."

13 Corpus Juris, p. 464, disposes of the matter briefly as follows:

"An agreement between attorney and client as to compensation is not illegal, although contemplating a proceeding to secure a divorce, unless it involves the personal interest of the attorney in preventing a reconciliation between the parties, as where it is contingent on success, or is measured by the amount of alimony secured."

In Theisen v. Keough (Cal.) 1 P. (2d) 1015, which is the latest we have found passing on the question, the court came to the same conclusion. and cited several of the above decisions, saying:

"Authorities from almost every jurisdiction support the doctrine as we have announced it."

There are numerous other decisions to the same effect, but we deem it unnecessary to refer to them.

We, therefore, hold that the contract is unquestionably illegal and void, and the lower court's decision thereon was right and proper.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys Robert Ray, Glenn H. Chappell, and B. A. Lewis in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Ray and approved by Mr. Chappell and Mr. Lewis, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, and CORN, JJ., concur.