**Beonard McCRARY and Lila McCrary, Plaintiff/Appellees,**

**v.**

**Suzanne McCRARY and Mark McCrary, Defendant/Appellees,**

**v.**

**Randle L. GRAHAM, Jr., and Mark Owen Stallings, Intervenor/Appellants.**

No. 62814.

Supreme Court of Oklahoma.

Nov. 1, 1988.

As Corrected Nov. 22, 1988.

D. Fred Doak, Oklahoma City, for defendant/appellee, Suzanne McCrary.

Chris D. Caldwell, Nelson & Caldwell, Oklahoma City, for intervenor/appellant, Randle L. Graham, Jr.

SIMMS, Justice:

This is an appeal brought by the intervenor/appellant, Randle L. Graham, Jr., from an order of the District Court of Oklahoma County which refused to vacate a judgment of foreclosure, quieted title against the appellant, disbursed proceeds of sale, and assessed attorney fees against appellants. We affirm the judgment of the trial court.

In December, 1975, defendants Suzanne and Mark McCrary, as husband and wife, executed a mortgage on their home in favor of Mark's parents, Beonard and Lila McCrary. Five years later, Suzanne and Mark were divorced. Just weeks prior to the time a final decree of divorce was entered, Beonard and Lila McCrary instituted foreclosure proceedings against the couple's home.

Suzanne was awarded the home and alimony for support, while Mark was granted custody. Both parties were dissatisfied with the terms of their divorce and appealed to this Court; Mark contesting the property distribution and alimony award, and Suzanne contesting the grant of custody to Mark.

Randle Graham, Jr., the appellant here, is an attorney who lived across the street from the younger McCrarys. He was contacted on behalf of Suzanne to represent her in the appeal of the divorce decree. Because she had no money and her primary concern was the custody of her children, Suzanne agreed to execute a quit claim deed to the home as attorney fees. This was at Graham's insistence. Rather than have himself appear of record as owner of the property during the appeal, however, Graham had Suzanne execute the quit claim deed in favor of Graham's brother-in-law, Mark Owen Stallings.

The deed was executed January 19, 1981, and Graham began his representation of Suzanne McCrary at that time. Because foreclosure proceedings had been instituted against the home, he also purported to represent Suzanne in that case as well. In the meantime, he began renting the house to third parties and collected the rent in his own name. At no time during the divorce appeal or during the initial foreclosure proceedings, did Graham disclose his own interest in the property to the courts hearing the matters.

In early May, 1982, the Oklahoma Court of Appeals rendered its decision in the McCrary divorce appeal. Suzanne retained her property award but lost her award of alimony for support and did not receive custody of the couple's children. After these results were known, and on May 18, 1982, the deed from Suzanne to Stallings was recorded in the office of the County Clerk of Oklahoma County.

During this time, and for the following months, Graham still purported to represent Suzanne McCrary in the foreclosure of the property that was now in Stallings' name. Primarily, this representation was in the form of offers to settle and to pay the outstanding indebtedness. This representation continued until at least September, 1983, when a Journal Entry of foreclosure in favor of Beonard and Lila McCrary was entered which reflects that the foreclosure defendants McCrarys appeared pro se, having discharged their attorney, Randle L. Graham, Jr.

On December 2, 1983, Graham and Stallings filed an application to intervene in the foreclosure action. At the same time Graham filed an application to withdraw as Suzanne McCrary's attorney.

The application to intervene was granted and intervenors then sought, and obtained, an order withdrawing the court's previous order granting special execution and order of sale.

Intervenors then filed a petition to vacate the judgment of foreclosure, alleging that plaintiffs had obtained the judgment by fraud upon intervenors as plaintiffs had taken judgment with notice of intervenors' claim and their judgment was for an amount greater than was sought in the petition. Stallings then executed a quit claim deed to Graham which was recorded December 20, 1983.

Graham presented this latter deed to the court as the basis of his claim of title to the property. At the outset, he testified that he had taken title, through Stallings, as attorney fees for representing Suzanne McCrary in her divorce appeal. He also admitted that he used Stallings as a straw man in order to prevent the appellate courts from learning that Suzanne was no longer owner of the property which was a subject of that appeal. Graham stated that he had made his claim of ownership known from the very beginning, however, by renting the property and collecting the rent in his own name. He testified that he knew the fair market value of the property greatly exceeded what would have been a reasonable hourly attorney fee in prosecuting an appeal from a divorce decree, yet denied that he took title as a contingency fee. Graham insisted that the arrangement constituted outright fees for services rendered.

At the close of the evidence presented by the intervenors, the trial court sustained appellee's demurrer. The court found that the quit claim deed from Suzanne to Stallings had been orchestrated through fraud, overreaching and oppression, resulting in a conveyance that was void *ab initio*. Title was quieted in Suzanne McCrary as against the appellant, subject to existing liens and

encumbrances. A constructive trust was imposed on the moneys received as rent by Graham, and Graham was ordered to pay the portion of Suzanne McCrary's attorney fees attributable to defending against Graham's petition to vacate. Graham appeals all of these orders.

■ As his first assignment of error, Graham asserts that the trial court erred in requiring intervenors to prove the basis for their claim of title after intervention had been allowed. Appellant contends that the order granting intervention had already decided the issue of their "having" an interest in the property. He asserts that on the face of the record, bare legal title was sufficient to sustain intervenors' claim to the property, and the court erred in going beyond issues raised in their petition to vacate. Intervenor's position is untenable. Graham was permitted to intervene pursuant to 12 O.S.1981, § 237 (since repealed in lieu of 12 O.S.Supp.1987, § 2019 (A), which allowed intervention when a party claimed an interest in the property which is the subject of litigation and the interest could not be protected in any other way. *Dean v. Fruehauf Corporation*, Okl., 562 P.2d 505 (1977). However, once allowed to intervene, the burden is on the intervenor to *prove* his allegation of ownership. See, e.g., *Greer v. Yellow Manufacturing Acceptance Corp.*, Okl., 436 P.2d 50 (1967); *Rector v. United States*, 20 F.2d 845 (CCA Okl.1927). Appellant clearly failed to meet that burden.

■ The appellant next argues that the trial court erred in cancelling the deeds from appellee and Stallings. Here, he attempts to suggest that cancellation of these conveyances was done solely to punish him for perceived violations of the Code of Professional Responsibility and he complains that the district court is not the proper authority to determine such violation, or impose punishment therefor. Again, we disagree. Appellant misapprehends the issues and the trial court's resolution of same.

We are of the opinion that the trial court was correct in cancelling the deeds in question and finding that Graham's fee was "clearly excessive". There can be no doubt that if this arrangement was intended as a contingency fee in a divorce case, the agreement to convey the property in question would be "against public policy and void and unenforceable." *Opperud v. Bussey*, Okl., 46 P.2d 319 (1935). The public policy behind this rule remains as compelling today as when the *Opperud* case was decided. Public policy encourages reconciliation between the parties. A contingency fee arrangement, based on the amount recovered in a divorce case, gives the attorney a personal interest in the litigation thus serving as an impediment to reconciliation. See also: *Longmire v. Hall.* Okl. App., 541 P.2d 276 (1975);[1] *People v. Nutt*, Colo. 696 P.2d 242 (1984). Such a fee arrangement in a divorce case is "unquestionably illegal and void and the [trial court's] decision thereon was right and proper." *Opperud*, supra, at 325. See also: 5 O.S. Supp.1987, Ch. 1, App. 3, DR5–107.[2]

■ The facts of this case support this conclusion. We note that had Ms. McCrary retained the property award, she would still have received nothing since Graham, not his client, then received the house.

---

1. *Longmire v. Hall*, supra, stands for the proposition, inter alia, that contingency fees in domestic and criminal cases are void ab initio as being against public policy. We note here that a typographical error appears at page 279 of that opinion, where it is stated that the contingency fee at issues is *not* against public policy. We correct that error here.

2. This Court adopted new Oklahoma Rules of Professional Conduct for attorneys which, we note, reflect a reaffirmation of the public policy considerations stated in the cases cited, supra. Rule 1.5(c) and (d) state, in pertinent part:

"A fee may be contingent on the outcome if the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law." Paragraph (d) states:
"*A lawyer shall not enter into an arrangement for,* charge, or collect:
(1) *any fee in a domestic relations matter ... which is contingent upon the result obtained.*"
See: Oklahoma Rules of Professional Conduct, Rule 1.5, effective July 1, 1988, by order of the Oklahoma Supreme Court, March 10, 1988, S.C. B.D. 3490. (emphasis added)

This is a 100% contingency fee arrangement in a divorce case and is "illegal and void." *Opperud,* supra, at 325.

If we accept Graham's alternative argument, that the arrangement was purely for services rendered, the result must be the same. Graham testified that he expended approximately 40 hours of billable time representing Ms. McCrary. Additional testimony was offered that a reasonable fee for this amount of time would have been approximately $4,500.00. Further testimony from Graham was presented that showed the fair market value of the home was in excess of $30,000.00, and that after payment of outstanding encumbrances, an equity balance in excess of $15,000.00. In addition, Graham testified that he received over $8,000.00 in rental income from the McCrary property during the pendency of these proceedings. Faced with these facts, we believe that a court sitting in equity would abuse its discretion if it failed to set aside the conveyance and restore the parties to their rightful positions.

■■■ Cancellation for failure of consideration is justified where some independent ground of equitable jurisdiction, such as fraud, exists. *Easterling v. Ferris,* Okl., 651 P.2d 677 (1982). Once the equitable power of the court is invoked, it is within that power of the court to see that all parties seeking relief have dealt fairly with one another and to determine all rights and claims and grant complete relief, even as to purely legal rights. *Continental Federal Savings and Loan Assn. v. Fetter,* Okl., 564 P.2d 1013 (1977). Here, Graham's own testimony amounts to an admission that he acted in bad faith and practiced fraud upon both the appellate court and the trial court in addition to defrauding, overreaching and behaving oppressively toward his client. The fact that this behavior appears to violate a number of disciplinary rules and that the trial court noticed and noted those breaches, is not significant for the decision in this case. Graham's admitted wrongdoing and fraudulent acts are sufficient in themselves to justify cancellation. *Easterling v. Ferris,* supra; *Haggerty v. Key,* 100 Okl. 238, 229 P. 548 (1924). The observa-

tions that intervenor's actions violated the Code of Professional Responsibility were merely gratuitous comments brought about by the circumstances. The observations certainly do not, in some perverse manner, weigh in Graham's favor.

■■■ After the petition in error had been filed in his case, appellant filed a motion to vacate before the trial court contending that the trial court had lacked jurisdiction to render judgment adverse to appellant. He asserted that the appearance docket reflected that in October, 1982, years before judgment for plaintiff was rendered, the trial court had set the matter on its disposition docket, and by routine minute entry, the action had been "dismissed without prejudice" by the court for lack of diligent prosecution.

The docket does not reflect that any notice was given to parties or counsel of either the matter being set or of the "dismissal" being rendered or entered. This early dismissal entry was obviously unknown to everyone involved in this litigation, including the trial court and intervenor/appellant. The parties, of course, made many appearances after the entry and during that time appellant represented both the defendant and himself as intervenor.

We will not here examine questions of whether the case was properly placed on the disposition docket in the first instance, or whether appellant's actions in bringing the entry discovery to the attention of the trial court after the petition in error was filed and then before us by amended petition in error were procedurally correct. As we have the inherent power to inquire into our jurisdiction, whether placed in issue by the parties or on our own initiative, we do so here and affirm the trial court's order overruling intervenors' challenge to its continuing jurisdiction.

The trial court was fully apprised of this claimed defect. The parties took issue with intervenors' position and plaintiffs filed a motion to correct the record. The trial court ruled correctly that it had continued to have jurisdiction over the matter. A judgment is deemed rendered only when its

terms are announced to the parties by the judge, and a judgment *in absentia* is not "rendered" until notice of its entry is mailed to the parties. *McCullough v. Safeway Stores, Inc.*, Okl., 626 P.2d 1332 (1981); Rules of Appellate Procedure, 12 O.S.1981, Ch. 15, App. 2, Rule 1.11(b). See: *Peralta v. Heights Medical Center, Inc.*, — U.S. —, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988). We also note that after the trial court's ruling the intervenors attempted to obtain extraordinary relief from this Court to prohibit the court from proceeding further, and we denied relief.

■ Lastly, the appellant argues that the award of attorney fees in favor of Ms. McCrary was an abuse of discretion and not supported by the record. Here, too, we disagree.

The record shows that the trial court found, under the guidelines of *City National Bank and Trust Company of Oklahoma City v. Owens*, Okl., 565 P.2d 4 (1977), that the appellant had engaged in fraud and oppressive behavior in bringing the parties into court to litigate his claim. That the appellant did indeed engage in oppressive behavior is obvious from the summary of facts herein. As in *Owens*, we cannot say under the facts of this case, that the court exceeded its authority in awarding partial attorney fees. There is no evidence in this record that the trial court abused its discretion in exercising its inherent equitable powers. Such an award will not be disturbed on appeal absent a clear showing of abuse of that discretion. *McCoy v. McCoy*, Okl., 429 P.2d 999, 1012 (1967); *Rodesney v. Hall*, Okl., 307 P.2d 130 (1957).

For the reasons stated herein, the judgment of the district court is AFFIRMED. Judgment in favor of appellee is rendered on the supersedeas bond. Appellee Suzanne McCrary is awarded her costs of this appeal and a reasonable attorney fee for the purpose of defending this appeal, the same to be set by the trial court after notice and adversary hearing.

DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES, LAVENDER and ALMA WILSON, JJ., concur.

KAUGER, J., concurs in result.

OPALA, J., not participating.

KAUGER, Justice, concurring in result:

Contingent fees *per se* are neither illegal nor violative of public policy.[1] Often contingent fees are the only way a litigant may receive legal services.[2] However, these contracts are subject to exceptions, and contingent fees in divorce actions have traditionally been held to be illegal and void because they contravene public policy. The two reasons advanced in *Opperud v. Bussey*, 172 Okl. 625, 46 P.2d 319, 322, 324 (1935) for declaring contingent fee contracts in divorce cases invalid were that: 1) There was no necessity for such contracts because the court was authorized by law to require the husband to pay suit money, thus enabling the wife to prosecute her action. The court, in its discretion, could require the husband to pay as alimony any money necessary to enable the wife not only to support herself, but also to prosecute or defend the action, thereby negating the necessity for a contingent fee. 2) Public policy encourages reconciliation between the parties. A contingent fee arrangement, based on the amount recovered in a divorce case, would give the attorney a personal interest in the litigation thus serving as an impediment to reconciliation.

The first reason has, depending on the circumstances of the case, been abrogated by statute. The Oklahoma Code of Civil Procedure, 12 O.S.1981 § 1276 provides that "... the court may require the husband or wife to pay such reasonable expenses of the other in the prosecution or defense of the action as may be just and proper considering the respective parties and the means and property of each ..." See also *Chamberlin v. Chamberlin*, 720 P.2d 721, 727 (Okla.1986) and *Gardner v.*

---

1. *State ex rel. Howard v. Oklahoma Corp. Comm'n.*, 614 P.2d 45, 49 (Okla.1980); 5 O.S. 1981 § 7.

2. *Sneed v. Sneed*, 681 P.2d 754, 756 (Okla.1984).

*Gardner,* 629 P.2d 1283, 1285–86 (Okla. App.1981). The second reason, the encouragement of reconciliation, is still required both by law and by public policy.