OSCN Found Document:GARRETT v. BELL

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 GARRETT v. BELL
2024 OK CIV APP 13
548 P.3d 801
Case Number: 120999
Decided: 10/27/2023
Mandate Issued: 04/25/2024
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II

Cite as: 2024 OK CIV APP 13, 548 P.3d 801

 

DAVID M. GARRETT, an individual, and GARRETT LAW OFFICE, A Professional Corporation, an Oklahoma limited liability company, Plaintiffs/Appellants,
v.
RICHARD A. BELL, an individual, and THE BELL LAW FIRM, LPPC, a Professional Corporation, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE DAMAN H. CANTRELL, DISTRICT JUDGE

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS

Charles L. Richardson, Raymond S. Allred, Colton L. Richardson, RICHARDSON RICHARDSON BOUDREAUX, Tulsa, Oklahoma, for Plaintiffs/Appellants

Clark O. Brewster, Montgomery L. Lair, BREWSTER & DE ANGELIS, PLLC, Tulsa, Oklahoma, for Defendants/Appellees

STACIE L. HIXON, JUDGE:

¶1 Plaintiffs David M. Garrett and the Garrett Law Office (collectively "Garrett") appeal an order granting summary judgment on their claims against attorney Richard A. Bell and the Bell Law Firm, LPPC (collectively "Bell"), in this attorney's fee dispute. Garrett sought declaratory judgment as to the enforceability of a fee-splitting or referral agreement against Bell, and asserted various related contract and tort claims.[1] Bell asserted that an agreement to share fees on any particular case was unenforceable under Oklahoma Rule of Professional Conduct 1.5(e), and that Garrett's claims to fees should have been brought during proceedings for fees before the Workers' Compensation Court of Existing Claims (CEC) and were barred by the doctrine of res judicata or claim preclusion. The district court granted summary judgment to Bell. On review of the applicable law and the record, we affirm the trial court's judgment of December 21, 2022, in part, with respect to eighteen cases Bell did not litigate in the CEC, and reverse the remainder of the district court's judgment, and remand for further proceedings.

BACKGROUND

¶2 The Garrett and Bell law firms represent claimants in workers' compensation cases. The parties agree that in 2005, the attorney responsible for litigating workers' compensation cases at the Garrett firm passed away. Garrett contends that, thereafter, it agreed to refer workers' compensation cases to Bell in exchange for a portion of the fee.

¶3 The parties agree that on August 16, 2005, Bell sent a letter to Garrett (referred to hereafter as "Agreement,") which stated:[2]

In reference to our recent conversation, I agree to the following pertaining to any cases that you refer to me:

1. I agree to send you 50% of the attorney fee on the day that the client gets paid;
2. If the client returns with another case, I will send you 1/3 of the fee;
3. In reviewing the case, if I find any other litigation, i.e., auto accidents, divorce, bankruptcy, Social Security, etc., I will refer them back to you;
4. I will pay all of the file expenses pertaining to the workers' compensation cases and expect no reimbursement from you, win, lose, or draw.

Over the next several years, Bell apparently litigated a number of cases referred by Garrett and paid Garrett fees, but the parties ceased their arrangement in 2009.

¶4 In 2013, Bell sought return of fees paid to Garrett in a particular case before the CEC. In response, Garrett contended Bell had failed to pay fees in that case pursuant to their Agreement. The parties' dispute appears to have been considered in multiple individual cases before the CEC. Meanwhile, Garrett filed this action in April 2014.

¶5 Garrett's Second Amended Petition, filed November 3, 2015, asserted claims against Bell for declaratory judgment, as well as claims for breach of contract, fraud, deceit, constructive fraud, breach of fiduciary duty, unjust enrichment, civil conspiracy, and punitive damages.[3] The crux of each claim was that Garrett and Bell had agreed to split fees pursuant to the Agreement, and that Bell had allegedly failed to pay Garrett his share in a number of cases.

¶6 In 2021, Bell moved for summary judgment on Garrett's claims. Bell asserted that Garrett had no specific agreement with the clients in each of the individual cases at issue acknowledging the fee-splitting Agreement, and that the alleged Agreement was unenforceable pursuant to Oklahoma Rule of Professional Conduct 1.5(e).[4] Bell also identified forty-five cases in which it contended the fee issue was resolved, barring Garrett's claims, as well as another group of eighteen cases Bell contended it had not actually litigated.

¶7 Garrett disputed that he had no agreement with clients to divide fees with Bell, relying on copies of fee agreements with around fourteen clients which contained the following language:

The CLIENT(S) also agrees to allow THE ATTORNEY to employ the services of another law firm to CO-COUNSEL and otherwise assist in the litigation and administration of the CLIENT'S lawsuit. There is no increase in legal fee to the CLIENT(S) for this service.

Some of these agreements contained client signatures. Some were missing client signatures due to an alleged computer glitch.[5] None mentioned Bell or the Agreement between Garrett and Bell.

¶8 Garrett also presented copies of letters to seven clients advising them the firm had associated with Bell on his or her case, and claimed he had such letters as to all clients sent to Bell. Though the letters advised the association came at no additional cost to the client, the letters did not mention a division of fees and were not signed by the clients.

¶9 With respect to Bell's res judicata argument, Garrett did not deny the CEC

had already awarded fees in forty-five cases (largely to Bell alone). However, it argued the CEC lacked jurisdiction to enter those orders.

¶10 The trial court granted summary judgment to Bell, finding that Garrett's causes of action failed as a matter of law because any contract which might have existed between the parties violated Rule 1.5(e)(2), making the contract unenforceable. The court also found Garrett's claim to fees in the individual cases identified in Bell's Motion and litigated before the CEC to be barred by the doctrine of res judicata, i.e., claim preclusion.

¶11 Garrett appeals.

STANDARD OF REVIEW

¶12 "Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e. whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions." Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051. "Therefore, as the decision involves purely legal determinations the appellate standard of review of a trial court's grant of summary judgment is de novo." Id. The Court will "examine the pleadings and evidentiary materials to determine what facts are material to plaintiff's cause of action, and to determine whether the evidentiary materials introduced indicate whether there is a substantial controversy as to one material fact and that this fact is in the movant's favor." Ross by and through Ross v. City of Shawnee, 1984 OK 43, ¶ 7, 683 P.2d 535. All inferences and conclusions to be drawn therefrom are viewed in the light most favorable to the nonmoving party. Id.

ANALYSIS

A. The Agreement

¶13 Garrett contends the district court erred by determining the parties' fee-splitting Agreement violated the Rules of Professional Conduct and was therefore unenforceable. While we agree with the district court that the failure to obtain the clients' agreement to or ratification of the Agreement violates the Rules of Professional Conduct, we reverse the district court's determination that the Agreement was unenforceable on this basis.

1. Compliance with Rule 1.5(e)

¶14 On summary judgment, Bell argued the Agreement did not comply with the Rules of Professional Conduct and was thus unenforceable, and that Garrett did not have enforceable fee-splitting agreements executed by individual clients in the 166 cases.

¶15 Both parties addressed only the current version of Rule 1.5 of the Rules of Professional Conduct, 5 O.S.2021, Ch. 1, App. 3-A, which states:

e) A division of a fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;

(2) the client agrees to the arrangement and the agreement is confirmed in writing; and

(3) the total fee is reasonable.

The parties' dispute on summary judgment concerned subpart (e)(2). That subpart requires that the client agree in writing to the fee-splitting arrangement.

¶16 Notably, at the time of the 2005 Agreement on which Garrett relies, the text of Rule 1.5(e) was slightly different. At that time, the Rule stated:

e) A division of fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;

(2) the client is advised of and does not object to the participation of all of the lawyers involved; and

(3) the total fee is reasonable.

5 O.S.2001, Ch. 1, App. 3-A. Though slightly different, this version of the Rule would not compel a different result, if applicable.[6] Under this version, if the fee division was not proportional, each lawyer must assume joint responsibility for the representation by written agreement with the client. The Agreement does not address whether each party assumed joint responsibility in the litigation, and as stated, is not executed by the client. To the extent the Agreement is otherwise a binding contract, that document lacks the agreement or ratification by a client necessary to comply with the requirements of either version of Rule 1.5(e).

¶17 In opposition, Garrett argued that individual fee agreements with clients attached to his Response, and/or his subsequent letters to seven clients advising them of its association with Bell, fulfilled the requirements of Rule 1.5(e)(2), and thus the fee-splitting Agreement is enforceable. Specifically, Garrett contended that its client contracts acknowledged that Garrett could or may associate with other counsel on his or her case. He argued his subsequent letter advising some of these clients of a particular association with Bell met the spirit of Rule 1.5, which Garrett contended was "to inform clients who exactly is working on their case."

¶18 This argument is unsupported by citation to authority and is unpersuasive. The entirety of Rule 1.5 is concerned with division of an attorney's fee. Subpart (e) is specifically directed to the division of fees between lawyers not of the same firm, and how those fees will be divided. Many of the handful of contracts Garrett supplied are undated, and it is unclear which version of the Rule would apply. If subject to the current version of Rule 1.5(e)(2), the clients are clearly required to agree in writing to the fee division arrangement. For those contracts entered into prior to 2008, the Rule permitted fee division only if the fees to be divided were proportional to the work performed, or if counsel assumed joint responsibility through a written agreement with the client, in addition to requiring the client be informed of and agree to all counsel involved. The requirement of the client's written consent in both versions of Rule 1.5(e) is not satisfied by simply advising the client of the potential association of another unidentified lawyer as co-counsel.[7]

¶19 Giving the pertinent provisions of Rule 1.5(e) their plain meaning, neither Garrett's client contracts nor its subsequent letters meet the requirements of the Rule, alone or in conjunction with the Agreement.[8] Garrett produced no other evidence indicating that any of the 166 clients had been informed or were ever aware that Garrett and Bell would split an attorney's fee on the matter. The only material produced on summary judgment which memorializes an agreement to split fees with Bell is the Agreement.[9] The question then is whether Garrett could enforce the Agreement, despite this lack of compliance with Rule 1.5.

2. Enforceability of the Agreement

¶20 Bell contended on summary judgment that an agreement which violates the Rules of Professional Conduct is unenforceable for violation of law or public policy, and thus the Agreement between Bell and Garrett is unenforceable. We disagree under these facts.

¶21 It is well settled that Oklahoma courts will not enforce a contract which violates an express provision of the law or is contrary to public policy. See generally, 15 O.S.2021, § 211; Kincaid v. Black Angus Motel, Inc., 1999 OK 54, ¶ 7, 983 P.2d 1016 (a void contract is one that is illegal or contrary to public policy). Bell contended on summary judgment that Oklahoma case law holds that a violation of the Rules of Professional Conduct renders a contract contrary to public policy, or unenforceable. In support, Bell cited McCrary v. McCrary, 1988 OK 122, 764 P.2d 522, arguing that McCrary holds that a contingency agreement recovered in a divorce action was unenforceable due to a violation of the Rules of Professional Conduct.

¶22 While McCrary mentioned the contingency fee agreement in that case violated a provision of the previous Code of Professional Conduct, the Court's determination that the agreement was unenforceable was based on longstanding Oklahoma precedent declaring such a contingency agreement void as to public policy. See id. (citing Opperud v. Bussey, 1935 OK 1221, 46 P.2d 319).[10] In Opperud, the Court declared contingency agreements in divorce cases against public policy, and thus void and unenforceable, because contracts in which the attorney's success depended on the amount procured discouraged settlement and reconciliation between husband and wife. That policy is memorialized in Rule 1.5(d). Bell cites to no similar declaration by the Oklahoma Supreme Court that fee-splitting arrangements between counsel are void as a matter of law or public policy if they fail to meet the requirements of the Rules of Professional Conduct.[11]

¶23 We find no Oklahoma Supreme Court case which has addressed whether counsel may invoke violation of Rule 1.5(e) to render a fee-splitting agreement between counsel unenforceable, nor do we find an Oklahoma Supreme Court case which holds that every violation of the Rules of Professional Conduct renders a fee agreement void as unlawful or in violation of public policy. However, the Court has declined to allow violation of Rule 1.5 to be used as a defense to avoid liability for fees.

¶24 The Court's analysis in Oklahoma Turnpike Authority v. Horn, 1993 OK 123, 861 P.2d 304, is informative. In that case, landowners in a condemnation action sought to recover their statutorily-authorized attorney fees from the Oklahoma Turnpike Authority (OTA). OTA argued the fees were not recoverable because a fee-splitting agreement between the landowners' counsel violated Rule 1.5(e) because it was not in writing and did not show each lawyer assumed joint responsibility for the litigation. OTA suggested granting the fee award would condone violation of Rule 1.5(e). Id. at ¶ 16. The Court found OTA's argument was answered by the section defining the scope of the Rules of Professional Conduct, which states:

Violation of a Rule should not give rise to a cause of action nor should it create presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Further-more, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a
duty. . . .

Id. at ¶ 17 (quoting St. 5 O.S.1991, Ch.1, App.3)(emphasis added).[12] Thus, the Court held OTA could not use Rule 1.5 as a weapon to deprive the landowners of their right to recover fees. Id. at ¶ 18.

¶25 Horn is not directly on point because it concerned an attempt by a third party to invoke a violation to invalidate two parties' fee-splitting agreement. Notably, though it could have raised the issue, the Court made no holding that any violation of the Rules of Professional Conduct automatically voids a contract. In any event, after Horn, the Court addressed another fee dispute in Pierce Couch Hendrickson Baysinger & Green v. Freede, 1997 OK 33, 936 P.2d 906, which we find instructive.

¶26 In Freede, a law firm sued its client for litigation costs he had agreed to pay as part of a contingency agreement. There was no dispute that the client had engaged the law firm to represent him and had agreed to pay fees, though the parties disagreed how the costs provision was to be applied. However, the client argued he was not obligated to pay costs because the contingency fee agreement was not initially in writing as required under the Rules of Professional Conduct. The Court again pointed to language defining the scope of the Rules of Professional Conduct and expressly stated, "In Horn, this Court disallowed the Rules to be used to negate liability for attorney fees. Likewise the Rules cannot be used as a basis for negating liability for costs in the present case." Id. at ¶ 28.

¶27 Freede did not concern a fee-splitting arrangement, but unlike Horn, it concerned a direct dispute between two parties to an attorney-fee contract, the client and counsel. Yet, even in that instance, the Court declined to find a fee agreement unenforceable based purely on an alleged violation of the Rules of Professional Conduct.[13] While certain violations of the Rules may invoke public policy considerations, the Court's decisions in Horn and Freede make reasonably clear that not every violation renders a fee contract void on the grounds of public policy. Those cases also make clear that, generally, the Rules may not be invoked to negate liability for attorney's fees.

¶28 Here, Bell invoked violation of the Rules of Professional Conduct to avoid liability for fees purportedly owed under the Agreement that Bell authored and sent to Garrett. This is not a circumstance in which Garrett or Bell sought to enforce the Agreement against a client with no knowledge thereof, a circumstance we do not address. Based on our interpretation of the foregoing authority, Bell cannot rely on the violation of Rule 1.5(e) as a defense to liability for fees owed, if any. For this reason, we must reverse that portion of the district court's judgment that finds the Agreement unenforceable on this ground.

B. Res judicata or claim preclusion

¶29 Garrett also argues the trial court erred by determining its claim for fees in approximately forty-five cases was barred by claim preclusion or res judicata, because the CEC had denied Garrett a fee in those cases. Indeed, the many orders in question state that "the Bell Law Firm does not owe any attorney fee to the Garrett Law Firm," which is the basis of Bell's res judicata argument. Garrett contends the CEC did not have subject matter jurisdiction to consider a fee dispute between Bell and Garrett, was not a court of competent jurisdiction, and its holdings were not binding. We agree that the CEC did not have jurisdiction to determine Garrett's entitlement to fees under the Agreement and reverse the trial court's judgment on this point as well.

¶30 "Under the principle of claim preclusion, a final judgment on the merits of an action precludes the parties from relitigating not only the adjudicated claim, but also any theories or issues that were actually decided, or could have been decided, in that action." Miller v. Miller, 1998 OK 24, ¶ 23, 956 P.2d 887. "When claim preclusion is asserted, the court must analyze the claim involved in the prior action to ascertain whether it is in fact the same as that asserted in the subsequent action." Id. "The doctrine requires an identity of subject matter, of the parties and their privies, of the capacity of the parties and of the cause of action." Barker v. State Ins. Fund, 2001 OK 94, ¶ 11, 40 P.3d 463.

¶31 Here, there is no dispute that Garrett and Bell are the same parties disputing fees in the same forty-five cases in which fees were previously awarded by the CEC. The dispositive issue in Bell's res judicata argument is Bell's contention that Garrett could have raised his claim to fees before the CEC, and Garrett's contention that it could not have raised those claims in that court, and any ruling by the CEC is not binding.

¶32 Garrett contends any order the CEC entered, or could have entered, on its entitlement to fees pursuant to the Agreement is void for lack of subject matter jurisdiction. Claims outside of the CEC's jurisdiction or statutory framework to adjudicate would not be barred by the doctrine of claim preclusion, and that court's orders would have no effect on claims Garrett failed to raise in a subsequent proceeding. See e.g., Wilson v. Kane, 1993 OK 65, ¶ 5 n.11, 852 P.2d 717 ("The general rule against splitting causes of action recognizes an exception where, as here, "formal barriers existed against full presentation of [the] claim in [the] first action.")(quoting Restatement (Second of Judgments §26(1)(c) and cmt. c (1982));[14] Johnson v. Southwestern Battery Co., Inc., 1966 OK 16, ¶ 6, 411 P.2d 526 ("It would seem not to be questionable that in this jurisdiction res judicata and estoppel by judgment will not apply so as to be conclusive against a party who was forced to litigate the questions involved in a court of limited jurisdiction where the claims and demands of such party, legally assertable and asserted, could not be litigated.").

¶33 The Workers' Compensation Court (and now the CEC) is a statutory tribunal of limited jurisdiction. Red Rock Mental Health v. Roberts, 1996 OK 117, ¶ 13, 940 P.2d 486. The CEC clearly possesses jurisdiction to award fees in workers' compensation cases pursuant to the statute in effect at the date of injury. See e.g., 85A O.S.2021 § 400(M). Title 85 O.S. Supp. 2005, § 30(C)[15] provides that a claim for legal services will be determined by the court pursuant to that section and sets limits on the percentage of fees which may be awarded.[16] These provisions do not address fee disputes between attorneys in a workers' compensation action.

¶34 Rule 51 of the Rules of the Workers' Compensation Court, however, addresses disputed attorney fees, and states in pertinent part:

A. When a dispute arises among several attorneys as to the identity of claimant's attorney of record, or when several successive attorneys lay claim to a fee in the same case, the trial judge shall decide the issues raised and allocate the fee allowed in proportion to the services rendered.

85 O.S. Supp 2014, Ch. 4, App. See also 85A O.S.2021, § 400(H). Garrett argues that this rule, which applied, limits the jurisdiction of the CEC, and that it does not apply to a contractual or fee-splitting dispute.

¶35 In support, Garrett points to a previous writ of prohibition issued by the Oklahoma Supreme Court in relation to a case before the CEC known as Melugin, Cause No. WC-1995-09299J. According to Bell, several years prior to the forty-five fee orders on division of fees, the CEC consolidated a number of cases in Melugin to address the parties' Agreement.[17] Garrett asserted the CEC was without subject matter jurisdiction. The Court agreed and granted the writ of prohibition. The Court's Order stated:

Original jurisdiction is assumed. Let a writ issue prohibiting the Workers' Compensation Court of Existing Claims from exercising jurisdiction over the contractual dispute between attorneys Garrett and Bell in that matter now pending before the Workers' Compensation Court of Existing Claims in which Bill Kagle is the petitioner and Melugin Sand & Gravel, Ace Am. Ins. Co. is the respondent, Cause No. WC-1995-09299J. Frasier & Frasier v. Oklahoma Workers' Compensation Court, 1993 OK 108, 859 P.2d 1098.

¶36 Bell contends that, pursuant to Melugin, the CEC lacked jurisdiction over the consolidated fee hearing, but not over the fee determinations heard individually in the forty-five cases at issue.[18] Garrett disagrees, citing Frasier.

¶37 In Frasier & Frasier, 1993 OK 108, the Court issued a writ of prohibition to the Workers' Compensation Court prohibiting it from exercising subject matter jurisdiction in the parties' apparent fee dispute, citing to 85 O.S., Ch.4. App., Rule 34 (later renumbered as Rule 51), explaining:

Rule 34 limits the Workers' Compensation Court to deciding two disputes regarding attorney fees:
(1) identity of counsel of record and (2) the allocation of fees among successive counsel. The issue here involves a law firm's dispute over allocation of fees under a complex financial agreement between associated attorneys concerning a share of net profits in a multi-member law firm. The Workers' Compensation Court lacks subject-matter jurisdiction to determine the rights, relationships, and money due under such contractual arrangements now in litigation in a district court action.

Id. at ¶ 1. Accordingly, Rule 51 allows resolution of a dispute as to who is actually the attorney of record, or consideration of disputes between successive attorneys and directing fees to be awarded in proportion to the work performed. This limitation leaves no room for the CEC to consider and resolve Garrett's claim based on the terms of a purported contract.[19] The CEC is limited to awarding fees in proportion to the work performed.

¶38 The CEC did not act outside of its jurisdiction in awarding fees to Bell in the forty-five cases based on the proportion of work performed. However, it was not within the CEC's jurisdiction to consider Garrett's claim to fees based on the parties' Agreement. Garrett could not have properly raised that argument. It was not within the CEC's jurisdiction to determine whether Bell owed Garrett fees under the Agreement, and its orders denying fees to Garrett do not preclude Garrett's claims for fees in this action. Therefore, we reverse the district court's judgment entered on this basis.

C. Condition Precedent

¶39 Bell also argued below that it was entitled to summary judgment on eighteen cases litigated by others, not Bell. Garrett initially denied Bell's contentions but admitted at the time of hearing that it had no evidence disputing Bell's contention and that summary judgment should perhaps be entered on those issues. The district court's order disposed of Garrett's claims on other grounds and did not address this issue. We are not bound by the district court's reasoning and may affirm the judgment below on a different rationale. See Hall v. Geico, 2014 OK 22, ¶ 17, 324 P.3d 399. Thus, we affirm the district court's grant of summary judgment to Bell in part as to the eighteen cases identified in its Motion for Summary Judgment.

CONCLUSION

¶40 Though the Agreement and associated contracts Garrett relies on do not comply with the requirements of Rule of Professional Conduct 1.5(e), the Rules of Professional Conduct may not be used as a defense in this dispute between Garrett and Bell. The district court's summary judgment on this basis is contrary to law and must be reversed.

¶41 Additionally, Garrett's claims with regard to the forty-five cases identified in Bell's Motion for Summary Judgment are not barred by the doctrine of res judicata or claim preclusion. A determination of Garrett's right to fees under the Agreement was not within the subject matter jurisdiction of the CEC. Neither an order of the CEC on fees, nor any failure of Garrett to raise the fee dispute in the forty-five cases before the CEC, bars its ability to pursue those claims here.

¶42 Thus, we affirm the district court's judgment of December 21, 2022, in part, as to the eighteen cases that Bell has established it did not litigate and reverse the district court's grant of summary judgment on the remainder of Garrett's claims.

¶43 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.

WISEMAN, P.J., and BLACKWELL, J. (sitting by designation), concur.

FOOTNOTES

[1] Bell argued and the district court found that its determination that the purported fee-splitting agreement or contract was dispositive of the entirety of Garrett's claims. Garrett did not argue to the contrary.

[2] Bell limited its argument on summary judgment to whether the Agreement was enforceable despite a violation of the Rules of Professional Conduct. Our reference to the letter as the Agreement is not intended to signal that the Court has considered or determined Bell's August 16, 2005, letter applies and is enforceable on any other ground.

[3] Though listed as such in the Second Amended Petition, punitive damages are not a separate cause of action.

[4] Garrett's Second Amended Petition did not identify the cases in which he contended he was owed but did not receive a fee. However, Garrett admitted on summary judgment that, as of his response, he contested fees in 166 cases referred to Bell, which were apparently identified in discovery. Those 166 cases appeared to be at issue on summary judgment.

[5] Garrett asserted that he required every client to sign such agreements, but that he had lost many of these agreements due to a computer crash.

[6] It is not clear from the record when Bell entered into an arrangement to represent each of the individual clients at issue, and thus, which version of the Rule might apply to that arrangement.

[7] While we find no Oklahoma law on the subject, In the Matter of Franklin Y. Wright, 138 Fed. App. 690 (5th Cir. 2005) (unpublished) addresses this issue. In that case, the court considered whether a fee-sharing agreement was enforceable, under Rule 1.04(f) of the Texas Disciplinary Rules of Professional Conduct. See Rule 1.04. Fees, V.T.C.A., Govt. Code T. 2, Subt. G App. A, Art. 10, § 9, Rule 1.04. Though the rule is not identical to Oklahoma's Rule 1.5, the version of the Texas rule at issue required that an agreement for division of fees must be made "by written agreement with the client, with a lawyer who assumes joint responsibility for the representation" as well as a requirement that the client "is advised of and does not object to the participation of all the lawyers involved." Wright, 139 Fed. App. at 696. The terms of the fee-sharing agreement between counsel Wright and Stone were not in writing and signed by the client. Wright argued its contingency fee agreement with the client, authorizing Wright "to associate such other Attorney or Attorneys in this cause as they may desire," satisfied the rule. Id. However, the Fifth Circuit read the rule to require that a fee-sharing agreement between two attorneys must be in writing and signed by the client. The court found that "[t]he mere authorization to associate other counsel in the contingency agreement, without setting out the fee splitting arrangement between Stone and Wright, or even identifying Stone, does not satisfy this subpart." Id.

[8] Garrett reasoned that the client is sufficiently informed because the clients were assured any arrangement with other counsel will come at no additional cost and can have no objection to any division of fees Garrett and Bell may reach between themselves. We need not speculate as to all the reasons a client may wish to be fully informed. The Rule plainly directs that clients agree in writing to the arrangement here, as set forth in Rule 1.5(e).

[9] In this case, Garrett sought a declaration on the "existence/scope" of the referral agreement between it and Bell, i.e., whether that agreement was enforceable, and to recover fees thereunder. On summary judgment, Bell addressed only whether that Agreement, or other client agreements, were unenforceable for violation of Rule 1.5, and whether Garrett's claim for fees in some cases is barred by res judicata. Neither Bell nor Garrett addressed on summary judgment whether Bell's letter was otherwise an enforceable contract. We do not decide whether the Agreement is or is not otherwise enforceable, whether it applies to the cases at issue, or whether Garrett has established any right to payment thereunder.

[10] Bell also cites to the unpublished Oklahoma Court of Civil Appeals (COCA) opinion, Gavin Agee Carlton, P.C. v. Brent W. Coon, P.C., No. 119,100 (Okla. Civ. App., Nov. 18, 2020). While that case did hold a fee splitting agreement without written consent of a client was unenforceable for violation of public policy as expressed in the Rules of Professional Conduct, it cites solely to McCrary. Based on our analysis of McCrary, we are unpersuaded by Coon.

[11] Likewise, the COCA cases offered in support of Bell's proposition do not hold any contract is automatically void as to public policy if it violates the Rules of Professional Conduct, or particularly, the provisions of Rule 1.5(e)(2). Wright v. Arnold, 1994 OK CIV APP 26, 877 P.2d 616, found a non-refundable retainer provision in a contract void based on guidance from both decisional law and the statutory authority that prohibited a lawyer from retaining fees not earned or restricting discharge of an attorney. The Court also noted the agreement expressly violated the rule prohibiting retention of an unearned fee. In Pezold, Richey, Caruso & Barker v. Cherokee Nation Indus., Inc., 2002 OK CIV APP 40, 46 P.3d 151, the Court noted that courts may refuse to enforce an excessive contingency fee. The basis of that assertion was not simply the Rules of Professional Conduct, but 5 O.S.1991, § 7, limiting contingency fees to no more than 50%, as well as case law requiring fees to be reasonable and prohibiting fees which are clearly excessive. None of these cases hold that every violation of a Rule of Professional Conduct renders a contract void as unlawful or against public policy.

[12] 5 O.S.2021, Ch. 1, App. 3 contains the same language.

[13] The law firm asserted the agreement was not required to be in writing under rules applicable at the time. That issue was not resolved by the Court.

[14] In Wilson, the plaintiff sued the personal representative of her uncle's estate for conversion or mismanagement of her non-probate assets. In a prior probate action, the plaintiff had successfully established that she was the owner of certificates of deposit the personal representative had cashed and deposited into the estate's non-interest-bearing account. Id. at ¶ 4. Plaintiff's subsequent conversion action was based essentially on the personal representative's mismanagement of the certificates or the funds therefrom. The personal representative asserted that argument should have been raised in the probate proceeding, and the district court determined the plaintiff's claim was barred by res judicata. The Oklahoma Supreme Court reversed because it determined that plaintiff's conversion claim lay dehors the adjudicative range of the probate court, and thus could not have been brought in that action. Id. at ¶ 6. The Court noted that probate was a special statutory proceeding in which the law confined the court to considering a limited range of issues that did not include resolving disputes regarding non-probate assets. Id. at ¶ 6. While the Court recognized that a final judgment would bar not only adjudicated claims but also claims that could have been decided, the Court stated:

[f]or probate adjudications the effect of res judicata is circumscribed by the reality of our interdocket boundaries and by the statutes that narrowly craft probate as a special remedy. Where, as here, the claim sought to be litigated lay dehors probate and could not have been accommodated by its restricted framework¸ res judicata effect may not be accorded to the earlier orders in probate.

Id. at ¶ 8 (emphasis original).

[15] The workers' compensation cases at issue in this case were filed between 2004 and 2011, for injuries occurring prior to or during those years. Different versions of the previous Workers' Compensation Act would apply, depending on the case.

[16] Likewise, 85 O.S.2011, § 343 provided the Workers' Compensation Court had the exclusive jurisdiction to consider claims for legal services rendered in regard to prosecuting claims under the Workers' Compensation Act and set forth the percentages of an award that fees may not exceed. 85 O.S. Supp. 2005, § 172(H) and 85 O.S.2011, § 404(G) set forth the percentage of fees an attorney may recover against the Multiple Injury Trust Fund.

[17] Bell originally moved to dismiss this action pursuant to 12 O.S.2021, § 2012(B)(8), arguing Melugin was pending and would resolve the same issue. That Motion was rendered moot by the Court's exercise of original jurisdiction and grant of writ of prohibition.

[18] Bell also argued the Court denied Garrett's application to assume original jurisdiction in two of the forty-five individual matters after Melugin. The Court denied those applications without analysis. We therefore cannot conclude the Court declined original jurisdiction based on a finding the CEC was acting within its jurisdiction, as opposed to other factors the Court considers when deciding whether to assume original jurisdiction.

[19] Bell argued the fee dispute under the Agreement was a dispute between successive counsel and thus fell within the scope of Rule 51. However, the Rule nevertheless limits the CEC to awarding fees between successive counsel in proportion to the work performed, and not to resolution of counsel's contractual disputes.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
1994 OK CIV APP 26, 877 P.2d 616, 65 OBJ 2356, 
Wright v. Arnold
Discussed

 
2002 OK CIV APP 40, 46 P.3d 161, 
PEZOLD, RICHEY, CARUSO & BARKER, P.P.C. v. CHEROKEE NATION INDUSTRIES, INC.
Cited

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1988 OK 122, 764 P.2d 522, 59 OBJ 2944, 
McCrary v. McCrary
Discussed

 
1993 OK 65, 852 P.2d 717, 64 OBJ 1497, 
Wilson v. Kane
Discussed

 
1993 OK 108, 859 P.2d 1098, 64 OBJ 2835, 
Frasier & Frasier v. Oklahoma Workers' Compensation Court
Discussed at Length

 
1993 OK 123, 861 P.2d 304, 64 OBJ 2894, 
Oklahoma Turnpike Authority v. Horn
Discussed

 
1997 OK 33, 936 P.2d 906, 68 OBJ 903, 
Pierce Couch Hendrickson Baysinger & Green v. Freede,
Discussed

 
2001 OK 94, 40 P.3d 463, 72 OBJ 3283, 
BARKER v. STATE INS. FUND
Discussed

 
1966 OK 16, 411 P.2d 526, 
JOHNSON v. SOUTHWESTERN BATTERY COMPANY
Discussed

 
1935 OK 1221, 46 P.2d 319, 
OPPERUD v. BUSSEY
Discussed

 
1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, 
Carmichael v. Beller
Discussed

 
1996 OK 117, 940 P.2d 486, 67 OBJ 3131, 
Red Rock Mental Health v. Roberts
Discussed

 
2014 OK 22, 324 P.3d 399, 
HALL v. THE GEO GROUP, INC
Discussed

 
1998 OK 24, 956 P.2d 887, 69 OBJ 1172, 
MILLER v. MILLER
Discussed

 
1999 OK 54, 983 P.2d 1016, 70 OBJ 1829, 
Kincaid v. Black Angus Motel, Inc.
Discussed

 
1984 OK 43, 683 P.2d 535, 
Ross v. City of Shawnee
Discussed

Title 5. Attorneys and the State Bar

 
Cite
Name
Level

 
5 O.S. 7, 
Contingent Fee - Limitation on Amount-Compromise or Settlement - Effect on Liens - Contract Void When Layman Secures or Has Any Interest Therein
Cited

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 2012, 
Defenses and Objections - When and How Presented - By Pleading or Motion
Cited

Title 15. Contracts

 
Cite
Name
Level

 
15 O.S. 211, 
Unlawful Contracts
Cited

Title 85. Workers' Compensation

 
Cite
Name
Level

 
85 O.S. 343, 
Repealed
Cited

 
85 O.S. 404, 
Repealed
Cited

 
85 O.S. 30, 
Repealed
Cited

 
85 O.S. 172, 
Repealed
Cited

Title 85A. Workers' Compensation

 
Cite
Name
Level

 
85A O.S. 400, 
Dissolution of the Workers' Compensation Court
Discussed

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA